### ANDERSON v. MERCHANTS & MINERS STATE BANK.

RUSSELL, C. J.  On May 1, 1919, the defendant in fi. fa. made and delivered to the Merchants & Miners State Bank his promissory note for $1200 in payment of 20 shares of stock at $60 per share. On March 1, 1919, after a meeting of the directors of said bank, of which the defendant in fi. fa. was one, he made and delivered to said bank his note for $850. On May 14, 1919, the defendant in fi. fa. executed two separate deeds and a bill of sale, conveying to his wife by the deeds certain realty therein described in each deed respectively, and conveying by the bill of sale a certain stock of merchandise as a whole, or in bulk. The claimant is the wife of the defendant in fi. fa. The evidence as to the bona fides of the transaction is conflicting. There was sufficient evidence in behalf of the claimant to have authorized a finding in her behalf, and yet the evidence in behalf of the plaintiff in fi. fa. is sufficient to support the verdict of the jury finding the property in dispute subject to the fi. fa. The trial judge excluded from evidence two letters written to the defendant in fi. fa., dated June 27, 1919, and September 22, 1920, respectively, by Greenway, the cashier of the bank, the plaintiff in fi. fa., which tended to indicate, if not to establish, that the bank was in good condition, or at least solvent upon the dates referred to; and exception is taken to this ruling upon the evidence. The judge charged the jury that under the provisions of the sales-in-bulk act of 1903 (Civil Code of 1910, § 3226) the sale of the stock of goods by the defendant in fi. fa. to the claimant was void and ineffectual to convey title from

the former to the latter, unless an inventory had been taken and notice given to all of the creditors of the defendant in fi. fa.; and the plaintiff in error, excepting to the instruction, contends that the provision of section 3226, supra, has no application except where the creditors referred to sustain that relation by reason of the fact that the debts due them were created by the purchase of a portion or all of the goods included within the stock of merchandise, and insists that the debts due by a merchant in his personal capacity, entirely disassociated from his business as a merchant, are not within the purview of the sales-in-bulk act. *Held:*

1. The evidence supports the verdict returned by the jury.

2. The evidence as to the probable state of mind of one who has executed a written instrument, at a time subsequent to the making of the writing, is irrelevant and incompetent for the purpose of illustrating the intention which actuated the maker of the instrument at the prior time when it was in fact made and delivered.

3. By the express terms of section 3226 of the Civil Code (1910), "it shall be the duty of every person who shall bargain for or purchase any stock of goods, wares, or merchandise in bulk, for cash or credit, . . to demand and receive from the vendor thereof . . a written statement under oath of the names and addresses *of all the creditors of said vendor*" (italics ours), thus drawing no distinction between those creditors whose debts may have arisen from sales of merchandise and such creditors as sustain that relation by reason of indebtedness created by the debtor for other independent and disassociated reasons. Section 3226, supra, applies as well to a sale of a stock of goods in bulk by a debtor to a creditor in extinguishment of his debt as to a sale for cash or on credit. *Sampson* v. *Brandon Grocery Co.*, 127 *Ga.* 454 (56 S. E. 488, 9 Ann. Cas. 331). It comprehends sales of every character. Nothing herein ruled conflicts with the decision of this court in *Cooney* v. *Sweat*, 133 *Ga.* 511 (66 S. E. 257, 25 L. R. A. (N. S.) 758), in which the court ruled that the sale of an entire stock of lumber manufactured by a sawmill was not within the purview of section 3226, supra, because the application of the act of 1903 was restricted to a sale of "any stock of goods, wares, or merchandise in bulk," there being no contention that the stock involved in the case at bar was not one of "goods, wares, and merchandise." *Judgment affirmed. All the Justices concur.*

No. 4558. SEPTEMBER 16, 1925.

Claim. Before Judge Blair. Fannin superior court. September 19, 1924.

The Merchants and Miners State Bank was proceeding to bring to sale certain realty and a stock of general merchandise in the town of Mineral Bluff, when the process was arrested by the interposition of a claim. The property which was claimed had been levied upon as the property of J. W. Anderson, and the claimant, Mrs. M. C. Anderson, was his wife. The plaintiff in fi. fa. introduced the fi. fa., and the sheriff's entry of levy in which it was

stated that the property was in the possession of the defendant in fi. fa. The claimant introduced testimony tending to establish that a few days after her marriage in the spring of 1908 she loaned her husband $2000, at the time taking his note for that amount. She also submitted proof to the effect that she advanced to her husband the funds with which to pay the assessment which he incurred by reason of the failure of the bank at Mineral Bluff. The writings evidencing these indebtednesses were introduced in evidence and submitted to the jury. On May 14, 1919, the defendant in fi. fa. executed two deeds conveying to his wife certain realty described in each, as well as a bill of sale conveying to her his entire stock of merchandise in his store at Mineral Bluff, and these writings were recorded on January 24, 1920. The claimant also introduced tax receipts showing that all the property had been returned in her name and the assessments paid by her after the dates of the foregoing conveyances. The husband lived with the wife in the dwelling-house which was one of the pieces of property conveyed; and the sheriff testified that he could not swear who was in possession at the time the levy was made, the husband or the wife. For a certain period, as appears from the freight bills, goods for the store were shipped in the name of J. W. Anderson, the husband, but later the shipments were all made in the name of the claimant, the wife. The claimant explained the presence of her husband in the store after her purchase, placing it upon the ground that it was understood at the time of her purchase that the husband should assist in conducting the store, or otherwise she would not have accepted the stock in payment upon her debt, because of his superior knowledge of the business and of the customers. In rebuttal the plaintiff in fi. fa. put in evidence various circumstances tending to show the continuing possession and control of the property by the husband subsequently to the alleged purchase. The claimant offered in evidence two letters written on the bank's letterheads, of which the material portions are as follows:

"Copperhill, Tenn., June 27, 1919.

"Mr. John W. Anderson, Mineral Bluff, Ga.

"Dear Mr. Anderson: I think I can sell some of your stock now if you will send the certificates down to me. Send them by registered mail, and I will send you a receipt for them, and hold

them here until I can place them. You know you took 20 shares the first of May and made your note for $1200 and interest from date at 6% per annum. This note draws $6.00 interest per month and on the first of July there will be $12.00 interest on the note. Now I hope to be able to sell 20 shares of your stock by July 1st, and if I can would you be willing to accept $60.00 per share now and lose the interest the note has drawn for two months? Of course I might be able to sell it for the $60.00 per share and interest from May 1st at 6%; but before I try to close the deal with the party I have in view, I must know exactly what you are willing to do. I will try to place it so that you will be out nothing on it, but rather than miss a deal on it I would suggest that you accept the $60.00 per share for it. You know I took 11 shares and put in my note for them, and I hope to be able to place them with the same parties I have in view for buying yours. Rather than miss selling these shares now, I would lose the interest my note has drawn for two months. I merely mention this so you will know I am not suggesting something to you that I would not be willing to do myself. If possible, let me hear from you to-morrow.

"Your friend,          H. L. Greenway, Cashier.
"Business is holding up fine."

The other letter offered in evidence bore date of September 22, 1920, and was addressed to the defendant in fi. fa., as follows:

"I have your letter, and beg to advise that business is doing fine. We are gradually gaining new business all along, and things generally are looking fine for us. In regard to coal it is selling here now for $15 per ton. . . I doubt if you could have a few tons shipped without paying almost as much freight as it would require to ship a car. . .

"Your friend,          H. L. Greenway."

The trial judge excluded both letters, on the ground that the contents thereof were irrelevant and incompetent. The judge charged the jury as follows: "Now, the court gives you further instructions with reference to this personal property, an additional rule of law with reference to the stock of merchandise, and it relates to the manner of conveying merchandise in bulk. We have certain laws that have to be observed when one person undertakes to sell or convey to another a stock of merchandise in bulk, and

this statute I am going to read prescribes the manner in which the conveyance must be made." The court then read to the jury sections 3226, 3227, and a portion of section 3229 of the Civil Code (1910), concerning sales of goods in bulk, and charged that a failure by the defendant in fi. fa. and his wife to comply with the provisions of those sections would leave the title in the defendant in fi. fa. The court further charged that "the effect of that instruction, gentlemen, would be, if these requirements were not complied with, to leave the title in the defendant in execution to the stock of merchandise and make the stock of merchandise subject to the execution." Exception is taken to the charge upon this subject, upon the grounds: (a) The plaintiff in execution not being a creditor of the mercantile business of the defendant in execution, the bulk-sale law was not applicable to the case and should not have been given in charge, because said law "applies only to those creditors of persons whose relationship as such arises by virtue of or in connection with the debtor's mercantile business in which the stock of goods is used. . ." (b) Because the said law, being in derogation of the common law, should be strictly construed, and is not applicable in cases where the creditor's indebtedness grows out of a transaction disconnected with the mercantile or other business of the debtor. (c) Because said charge was not adjusted to the facts of the case, and was without any evidence to authorize it, for the reason that there was no evidence to show that the indebtedness upon which the execution of the plaintiff was based grew out of any transaction with the defendant in fi. fa. as a merchant, or that such indebtedness was in any wise connected with said mercantile business, or that credit was extended to the defendant in fi. fa. on the faith of his apparent prosperity indicated by such stock of merchandise. The jury found the property in dispute subject to the fi. fa. The claimant moved for a new trial, and excepted to the judgment overruling this motion.

*Thomas A. Brown* and *Morris, Hawkins & Wallace,* for plaintiff in error.

*William Butt,* contra.