115 So.2d 479

G. C. McRAE, d/b/a McRae Motors

v.

Harley B. BANDY and P. E. O'Neal, d/b/a Bandy and O'Neal Auto Sales.

8 Div. 925.

Supreme Court of Alabama.

Nov. 5, 1959.

Mead & Norman, Birmingham, for appellant.

Britnell & McEntire, Decatur, for appellees.

LIVINGSTON, Chief Justice.

The complaint in this cause is in trover for the recovery of damages for the conversion of one 1956 Bel Aire Chevrolet Automobile. The cause was tried by the court below without the intervention of a jury and resulted in a judgment for the plaintiffs. The defendant appeals.

Briefly stated, the facts are as follows: One Kenneth Bishop, representing the Bishop Motor Company, went to the place of business of appellees, Harley B. Bandy and P. E. O'Neal, partners, doing business as Bandy and O'Neal Auto Sales, in Trion, Georgia, and purchased from the appellees the Chevrolet automobile in question, and a 1956 Oldsmobile which is not involved in this litigation. Bishop paid for the two cars by check and immediately brought the cars to Alabama. The Chevrolet automobile, the car in question, was taken to the Dixie Auto Auction in Birmingham, Alabama, where it was purchased by the appellant, G. C. McRae, d/b/a McRae Motors. The Dixie Auto Auction paid Bishop for the automobile with a check of the appellant, which was endorsed by the Dixie Auto Auction.

The two cars were bought by Bishop from the appellees on November 27, 1955. The sale by Bishop to the Dixie Auto Auction of the automobile involved was made November 28, 1955, and the same day the Dixie Auction sold the automobile to the appellant.

Appellant carried the automobile to Decatur and sold it to one Henry Lee King on November 29, 1955.

On December 2, 1955, appellees' bank notified them that the check given to them by Bishop in payment of the automobile had been returned as worthless. On December 2, 1955, appellees came to Alabama in search of Bishop and the automobiles, but was unable to locate either Bishop or the automobiles. Appellees did encounter a Mr. Norman, attorney for the Dixie Auto Auction, who told appellees that the car in question had been sold through the Dixie Auto Auction to appellant on November 28, 1955.

On or about December 2, 1955, the appellant was informed by the Dixie Auto Auction that the title to the car was questionable and requested that appellant pick up the car from his customer and return it to them in Birmingham, Alabama. The Dixie Auto Auction Company also requested that appellant stop payment on the check given by him as payment for the Chevrolet automobile, this being the check which the Dixie Auto Auction had endorsed to Bishop.

Appellant contacted his customer, Henry Lee King, and requested King to return the car to them and that he, the appellant, would loan King a car until they could locate a similar one.

It appears from the testimony that appellant was aware on or about December 2, 1955 that the title to the Chevrolet automobile was in doubt.

On December 5, 1955, the appellees made a request that the appellant return the car to them. The appellees were not put in possession of the car but instead the appellant delivered the car to the Dixie Auto Auction, and it was subsequently taken to the State of Georgia and sold. Appellees were first notified on December 12, 1955 that the Chevrolet automobile had been removed from Alabama to Georgia and sold.

There appears in the record certain agreed stipulations of fact to the effect that

certain transactions did occur; namely, the sale of the car by Bishop to the Dixie Auto Auction, also the sale by the Dixie Auto Auction to the appellant, the McRae Motors. It was also stipulated that McRae sold the Chevrolet automobile to a customer, Henry Lee King, from whom the appellant later requested the return of the car. It was further stipulated that the car was returned by the appellant to the Dixie Auto Auction Company, who took it to Georgia where it was sold. While the stipulations appear in the record, nowhere do we find it argued that the stipulations would affect the questions of law raised by this appeal.

Under the foregoing facts, we come now to the question of whether the laws of Alabama or the laws of Georgia are controlling. In regard to the purchase of the cars by Bishop from the appellees, a transaction which took place wholly within the State of Georgia, the laws of Georgia are to be applied. As is stated in 11 Am.Jur., Sec. 66, p. 354:

"* * * It is usually stated that the effect generally of any transfer purporting to pass the title to personal property is governed by whether or not title passes by the transaction according to the law of the state in which the property was located at the time of the transaction. * * *"

It was stated in Hallgarten v. Oldham, 135 Mass. 1, 46 Am.Rep. 433:

"* * * When a sale, mortgage or pledge of goods within the jurisdiction of a certain State is made elsewhere, it is not only competent, but reasonable, for the State which has the goods within its power to require them to be dealt with in the same way as would be necessary in a domestic transaction, in order to pass a title which it will recognize as against domestic creditors of the vendor or pledgor. This requirement is not peculiar to Massachusetts, but has the sanction of the highest courts of the United States and of other States."

As further illustration of the point, it was said in Hutchison v. Ross, 262 N.Y. 381, 187 N.E. 65, 68, 89 A.L.R. 1007:

"The courts of the various jurisdictions have with substantial unanimity adopted certain rules. 'Capacity to make a valid conveyance of a chattel is determined by the laws of the State where the chattel is situated at the time of conveyance.' American Law Institute, Tentative Restatement Conflict of Laws, § 275. 'The essential validity of a conveyance of a chattel is determined by the law of the state where the chattel is situated at the time of the conveyance.' Id. § 277. In this state these rules have long been applied to the conveyance of tangible chattels. * * *"

In Georgia, where personal property is delivered to another under an agreement that he is to pay cash therefor, and where the cash payment is made by check, which the person receiving believes to be good, but which afterward proves to be worthless, no contract or sale arises and no title to the property passes, and the vendor may recover possession of the property from the vendee. Chafin v. Cox, 39 Ga. App. 301, 147 S.E. 154; Winton v. Butler, 53 Ga.App. 696, 186 S.E. 773. However, this principle by its express terms is applicable only as between vendor and vendee. The general rule applicable to property other than negotiable securities, that the seller can convey no greater right or title than he has, is only predicable of a simple transfer from one person to another where no other elements intervene. Capital Automobile Co. v. Ward, 54 Ga.App. 873, 189 S.E. 713. We think, therefore, that in accordance with the decisions of the Georgia courts, no title passed as between the vendor, who are the appellees in this case, and Bishop, the vendee.

It is the contention of the appellant that the laws of Georgia are to be ap-

plied in regard to the subsequent transactions which took place within the State of Alabama. We are not impressed with this view. Are we to presume that where there is a transaction in one state and subsequent transfer of that property to another state, that the state into which the property was taken must look to the state from which the property was removed in regards to all subsequent transfers?

In Weinstein v. Freyer, 93 Ala. 257, 9 So. 285, 12 L.R.A. 700, this court held that the statute of Georgia, where the conditional sale contract was made and where the property was then located and remained for two and one-half years, which avoids conditional sales contracts as against third parties unless recorded in thirty days of execution, did not apply so as to avoid the title of the vendor as against a purchaser in good faith from the vendee, after the property had been removed to Alabama.

It was said in Marvin Safe Company v. Norton, 48 N.J.L. 410, 7 A. 418, 421, 57 Am.Rep. 566:

"The contract of Norton, the defendant, with Schwartz for the purchase of the safe, was made at Hightstown in this State. The property was then in this state, and the contract of purchase was executed by delivery of possession in this state. The contract of purchase, the domicile of the parties to it, and the *situs* of the subject-matter of purchase were all within this state. In every respect the transaction between Norton and Schwartz was a New Jersey transaction. Under these circumstances, by principles of law which are indisputable, the construction and legal effect of the contract of purchase, and the rights of the purchaser under it, are determined by the law of this state. By the law of this state, Norton, by his purchase, acquired only the title of his vendor, only such title as the vendor had when the property was brought into this state and became subject to our laws."

■ Therefore, applying the laws of Alabama in regard to the transactions taking place within this state, we are of the opinion that Bishop having acquired no title to the automobile in Georgia could transfer no better title than he had when the property was removed to this state.

Section 29 of Title 57, Code of Alabama 1940, provides:

"(1) Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

The Court of Appeals had this to say in McClure Motor Co. v. McClain, 34 Ala. App. 614, 42 So.2d 266, 268:

"One may possess a chattel as a borrower, a bailee, lessee, or under other varied circumstances. A purchaser is therefore not entitled to rely on possession alone as indicating title and right to sell. Boozer v. Jones, 169 Ala. 481, 53 So. 1018."

To illustrate further, this Court used the following language in Moore v. Long, 250 Ala. 47, 33 So.2d 6, 7:

"It is well settled in Alabama that where one purchases chattels from another not the legal owner thereof, such purchaser acquires no better title than his seller had although he purchases without notice of the infirmity, and for a valuable consideration * * *."

See also Bennett & Co. v. Brooks, 146 Ala. 490, 41 So. 149; Barrow v. Brent, 202 Ala. 650, 81 So. 669; Barksdale v. Banks, 206 Ala. 569, 90 So. 913.

It was said in Claybrooke Warehouse & Gin Co. v. Farmers Cooperative Warehouse & Gin Co., 260 Ala. 518, 71 So.2d 88, 90:

> "In the case at bar when the defendant took possession of the cotton seed and paid for it he necessarily exercised dominion over the property in defiance and exclusion of the rights of the true owner. It is true that at that time the defendant bought the cotton seed in good faith and paid fair value for it, but it is also true that where goods are sold by a person who is not the owner and who does not have authority of the owner to sell, the buyer gets no better title than that which the seller has."

See Sec. 29, Title 57, Code of Alabama 1940; Geneva Gin & Storage Co. v. Rawls, 240 Ala. 320, 199 So. 734; Boutwell v. Parker, 124 Ala. 341, 27 So. 309; Slaton v. Lamb, 260 Ala. 494, 71 So.2d 289.

It is, therefore, the opinion of this Court that Bishop having no title to pass, he could not have passed any better title to Dixie Auto Auction than he had at the time of the transaction, therefore, Dixie Auto Auction acquiring no title from Bishop, could not have passed any title to the appellant.

The wrongful assumption or dominion over property of another in subversion and denial of his rights constitutes a conversion of such property irrespective of whether there was a demand made for the surrender and a refusal to surrender said property. Meador v. Evans, 188 Ala. 229, 66 So. 446; Woods v. Rose & Co., 135 Ala. 297, 33 So. 41; Moore v. Monroe Refrigerator Co., 128 Ala. 621, 29 So. 447.

We are of the opinion, and hold, that the original vendee Bishop, having no title at the time he brought the car into Alabama, could convey none to the Dixie Auto Auction. The Dixie Auto Auction having acquired no title from Bishop, could convey none to the appellant. The appellant having no title to the car, was in possession of it subversive to the rights of the true owner.

The holding of the lower court is without error and is, therefore, affirmed.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.