**CHATTANOOGA DISCOUNT CORPORATION, a corporation, organized and existing under the laws of the State of Tennessee, Plaintiff,**

v.

**Clifton L. WEST, individually, and doing business as West Motor Company, Defendant.**

**Civ. A. No. 1272.**

United States District Court
N. D. Alabama, M. D.
July 19, 1963.

Inzer, Martin, Suttle & Inzer, Gadsden, Ala., and Frank M. Gleason, Rossville, Ga., for plaintiff.

Lusk, Swann & Burns, Gadsden, Ala., and L. Clyde Traylor, Fort Payne, Ala., for defendant.

GROOMS, District Judge.

Plaintiff brought this action to recover $16,915.00 plus the reasonable value of hire, interest and costs, for the alleged conversion of seventeen automobiles described in Exhibit A to the complaint.[1]

A writ of detinue issued, and the United States Marshal took possession of two of the cars and delivered them to the plaintiff upon the execution of appropriate bond.

The defendant filed a plea of the general issue to the count in trover, and admitted possession of the two automobiles seized, but denied possession of the remaining automobiles.

Beginning on December 10, 1962, the evidence was taken before a jury. Extensive evidence was introduced, and when the evidence was in, both parties agreed that the jury should be dismissed and that the trial should proceed before the Court alone, and that the case should be decided as a nonjury case.

The evidence reveals that the plaintiff is a finance company in Chattanooga, Tennessee, operating under the laws of Tennessee, while the defendant individually operated an automobile business at Fort Payne, Alabama. It appears from the evidence that one Carl Ledbetter operated an automobile business in LaFayette, Georgia, and financed his automobiles with the plaintiff under the provisions of § 47–1001 et seq., of the Code of Tennessee Annotated, commonly referred to in that State as the "Uniform Trust Receipts Law."

The so-called trust receipts (There is a dispute as to whether they are true trust receipts.) were all executed in Tennessee and the automobiles apparently were at all times located in LaFayette, Georgia, prior to being sold by Ledbetter to the defendant. The trust receipts were not recorded in Georgia until after the sale by Ledbetter to the defendant.

The evidence further reveals that Ledbetter approached the defendant concerning the sale of the automobiles; that, after having gone to LaFayette to inspect the cars, the defendant indicated that he was not interested in purchasing them. Ledbetter, however, revisited the defendant at the defendant's cabin in

---

1. Litigation as to five of the twenty-three cars purchased by the defendant is pending in the State court.

Alabama, where the defendant offered to purchase 23 automobiles from Ledbetter for $13,500 (the 17 cars in question being included in the 23). Later, Ledbetter called the defendant by phone at the latter's home in Alabama and accepted his offer, and delivery was made by him during the night of April 19, 1962. These vehicles constituted all, or substantially all, of Ledbetter's stock of cars held by him for sale at his place of business in LaFayette.

Before concluding the purchase, the defendant made no inquiry as to any debt due upon the cars. Ledbetter made no payment to the plaintiff for the release of the cars as required by the trust receipts.

The plaintiff contends that Ledbetter was a mere trustee of the automobiles that are the subject of this suit, by virtue of the trust receipts which are alleged to be valid under the law of Tennessee; that under Tennessee and Georgia laws the so-called trust receipts need not be recorded; that the sale from Ledbetter to the defendant was fraudulent and in violation of the Bulk Sales Acts of Alabama and Georgia; that, therefore, the defendant could not be a bona fide purchaser.

The defendant's contention is that the sale from Ledbetter to him was in the usual and ordinary course of business and not in violation of the Georgia or Alabama Bulk Sales Acts; that since the property was at all times, before the sale in question, located in Georgia, the Georgia law as to the recordation of the trust receipts applies, and that under that law the trust receipts were not "true trust receipts" and were required to be recorded to be valid against a bona fide purchaser for value without notice, the defendant claiming that he was such a purchaser.

■ At the outset, the Court is met with a choice-of-law problem. In determining the formal and substantial validity of conveyances of tangible movables, the most widely held modern view is that the law of the actual physical situs of the property at the time of the transfer controls, 15 C.J.S. Conflict of Laws § 18d(1), pages 929–930; 2 Beale, Conflict of Laws, §§ 286.1 and 287.1 (1935); 11 Am.Jur., Conflict of Laws, § 69; and the law of the actual situs of a chattel at the time of the transfer determines whether the transfer is fraudulent. 15 C.J.S. Conflict of Laws § 18d(6).

Although it appears that the Alabama courts have not had occasion to decide the particular question of choice-of-law with respect to bulk sales, the recent case of McRae v. Bandy, 270 Ala. 12, 115 So. 2d 479 (1959), and authorities relied upon there, demonstrates that the Alabama choice-of-law rule is in accord with the above discussed principle that the validity of the conveyance of a chattel is controlled by the law of the state where the chattel is actually situated at the time of the transfer.[2] The following of this rule of law makes it unnecessary for the Court to determine whether the sale from Ledbetter to the defendant was made in Alabama or in Georgia, inasmuch as the undisputed evidence at the trial established that the vehicles involved were located at LaFayette, Georgia, at the time the transfer was consummated. The provisions of the Georgia Bulk Sales Act and other related laws, therefore, control in this respect.

■ A trust receipt is a method of financing commercial transactions, frequently employed in the marketing of automobiles. Motor Contract Co. v. Citizens & Southern Nat. Bank, 66 Ga. App. 78, 17 S.E.2d 195. There are two types of trust receipts transactions. The first is the so-called tripartite or "true trust" receipt where a finance company advances funds for the purchase of a chattel, purchases it, and receives title to it from the manufacturer, and delivers possession to the dealer, who gives his trust receipt to the finance company. The second type or the bipartite, which is recognized and validated by the Uniform Trust Receipts Act, is where the

2. See Roberts v. Norrell, N.D.Ala., 212 F.Supp. 897.

dealer has purchased and received title directly from a manufacturer or another and gives his receipt to the finance company. 89 C.J.S. Trust page 698. It is the latter type of trust receipt that we are dealing with in this case.

Trust receipts are not of recent origin as a convenient means of financing commercial transactions, and their application is discussed at length in the Second Circuit Case of In re A. E. Fountain, Inc., 282 F. 816, 25 A.L.R. 319.

Numerous decisions, too voluminous to consider in extenso, have attempted a comparison between a true trust receipt and a bailment or pledge, a chattel mortgage, or a conditional sales contract, and the only conclusion is that it is akin to but not exactly any of these mediums of trade, although it is at times treated as one of them. See In re James, Inc., 2 Cir., 30 F.2d 555, 558. Some courts have shown a disposition to look through and disregard the form of the transaction and who has strict legal title at the time the trust receipt is given, and determine who the parties actually intended the real owner to be, General Finance Corp. v. Krause Motor Sales, 302 Ill.App. 210, 23 N.E.2d 781, without much, if any, regard to the name by which it was designated. Motor Contract Co. v. Citizens & S. Nat. Bank, 66 Ga.App. 78, 17 S.E.2d 195.

In In re Harpeth Motors, W.D. Tenn., 135 F.Supp. 863, the Court held that under the Tennessee Trust Receipt Act, the entruster had a security interest in the property. Generally, a trust receipt is regarded as a security transaction. 53 Am.Jur., Trust Receipts, § 1, page 961.

The plaintiff here contends that under the Tennessee Uniform Trust Receipts Act, a trust receipt need not be recorded. Section 47–1014 provides that the entruster is entitled to file with the Secretary of State of Tennessee a statement of trust receipt financing, setting forth that the entruster and the trustee propose to engage in financing under trust receipt transactions. After filing with the Secretary of State, the security interest of the entruster, under individual trust receipts, is protected [3] against general creditors, subsequent lien creditors, and purchasers other than in the ordinary course of trade. The plaintiff has apparently complied with this requirement by so filing with the proper Tennessee officials. The purpose of this filing procedure is obviously to facilitate financing of automobiles and other chattels, and to prevent cluttering the records with innumerable documents whose usefulness would be short lived. Therefore, this appears to be a procedural aspect of the trust receipt law of Tennessee as opposed to a substantive one, inasmuch as such filing is not required as a condition to the validity of a trust receipt, because the entruster could record each transaction if he chose to do so. Assuming the correctness of this hypothesis, the State of Georgia, which has not adopted the Uniform Trust Receipts Act,[3a] would not be bound to accept the procedural aspects of the Tennessee Act.

Under the decision of Motor Contract Co. v. Citizens & Southern National Bank, supra, the trust receipts here involved are not "true" trust receipts, and with respect to recordation, amounted to no more than chattel mortgages, and were required to be recorded in Georgia to be valid as against a bona fide purchaser for value without notice of any lien or encumbrance [4] ; and the fact of

3. The protection is for a period of one month before and one year after the procurement of any trust receipts or goods falling within the designation in the statement. The period may be extended by filing a like statement. §§ 4 and 5 of par. 47–1014.

3a. See Uniform Commercial Code of Georgia, §§ 109A et seq., effective April 1, 1963, and especially § 109A–9–103.

4. Georgia Code, § 67–2501. See also Hamilton Nat'l Bank v. McCallum (Chattanooga Finance Co. v. McCallum), 6 Cir., 58 F.2d 912; Central Acceptance Co. v. Lynch, 6 Cir., 58 F.2d 915; and In re James, Inc., 2 Cir., 30 F.2d 555.

compliance with the Tennessee statute by the filing in that state would be without effect where the property was located in Georgia. Savannah Bank and Trust Co. v. Great American Ind. Co., 1 Cir., 303 F.2d 247; Campbell v. Bagley, 5 Cir., 276 F.2d 28.

The plaintiff strongly contends that the sale from Ledbetter to the defendant is in violation of the Georgia Bulk Sales Act, Code of Georgia, § 28–203 to § 28–207, in that the sale was out of the ordinary course of the business or trade of the vendor Ledbetter, and was a sale of substantially his entire business and was, therefore, a fraudulent transaction.

■ Although the sale of 23 automobiles in itself may not in many situations be one out of the ordinary course of business,[5] when such sale is made under the facts here disclosed and consists of a sale of all of Ledbetter's stock, or at least 23 of the 25 to 30 cars, the Court finds that not only was the sale "out of the usual or ordinary course of the business or trade of the vendor," but was also a sale of substantially the entire business or trade of the vendor in contravention of §§ 28–205 and 28–206 of the Code of Georgia, and is conclusively deemed fraudulent and void. Parham & Co. v. Potts-Thompson Liquor Co., 127 Ga. 303, 56 S.E. 460; C. M. Miller Co. v. Lunceford, 54 Ga.App. 21, 186 S.E. 766. The case of Goodman v. Clarkson, 39 Ga.App. 383, 147 S.E. 183, is factually quite similar to this case, and holds that the sale was "out of the usual or ordinary course of the business or trade of the vendor," and a fraud against existing creditors of the vendor.

■ The defendant challenges the right of the plaintiff to avail itself of the provisions of the Bulk Sales Law. This challenge appears to be without merit. Anderson v. Merchants' & Miners' State Bank, 161 Ga. 12, 129 S.E. 650; National Cash Register Co. v. Stubbs, 29 Ga.App. 543, 116 S.E. 44; C. M. Miller v. Lunceford, supra.

■ Even though trust receipts are invalid as against the interests of third parties acting in good faith and without knowledge for want of recording, as between the parties thereto, they will generally be treated as valid, and enforced according to their terms. 53 Am.Jur., Trust Receipts, page 961, et seq., §§ 3 and 8.

Since the defendant made no attempt to comply with § 28–205, and the transaction was one falling within § 28–206, the purported transfer to him was invalid, and he is in no position to urge the invalidity of the trust receipts for lack of timely recordation.

■ The gist of the action of detinue is the detention of the chattel at the time of the commencement of the suit. Webb v. Webb, 263 Ala. 607, 83 So.2d 325. The defendant had possession of only two of the vehicles at that time. These were delivered to the plaintiff on May 21, 1962, upon its execution of a replevin bond. The plaintiff is entitled to recover damages for the detention of those vehicles, Title 7, § 921, Code of Alabama 1940, but since it is in the possession of said vehicles, the Court will not assess the alternate value of those vehicles. Bolling v. Coffin, 262 Ala. 459, 79 So.2d 808. Plaintiff is not entitled to recover damages for detention of the cars which were not in the possession of the defendant at the time of the suit. In Webb, the Court said:

"* * * if the evidence reasonably satisfies the court or jury that the defendant wrongfully had possession of the property *at the time of the commencement of the suit,* the plaintiff may recover the costs of suit and damages for the detention."

The defendant did not have possession of 15 of the cars when the suit was commenced. Consequently, the plaintiff must look to its conversion count for recovery with respect to those cars not in the defendant's possession at that time.

Since the trust receipts here involved represent a security interest, the debt

5. Stemmons, Inc. v. Universal C.I.T. Corporation (Okl.), 301 P.2d 212.

itself is the value of plaintiff's interest. The trust receipts contain a release value as to each vehicle which, in the absence of evidence showing a different amount due the plaintiff, will be considered and taken as representing the amount the plaintiff has at stake. The total of the release value for the various cars shown on the several receipts equals the amount for which the notes are given, which note in each instance is a part of the document containing the trust receipt.

▇▇ Since the principal of the debt due the plaintiff has not fluctuated or increased, as the value of personal property might,[6] the plaintiff is entitled to recover interest at the legal rate from the time of the conversion. 89 C.J.S. Trover and Conversion § 171, page 648; 25 C.J.S. Damages § 53c, note 70, page 544. The debt as indicated herein, after deducting the release value of the two cars seized and delivered by the United States Marshal, amounts to $11,980.00. The plaintiff will be entitled to interest thereon at the rate of six per cent (6%) from April 19, 1962, to the date of this order.

▇▇ Since the Court is not bound by the opinion evidence as to the value of the use of the two vehicles delivered to the plaintiff in determining the damages for their detention, but is entitled to weigh the same as other opinion evidence. The Court concludes that the sum of $150.00 would be a reasonable sum to award for the detention of the 1956 Chevrolet Station Wagon, Serial No. B56F042128, and the 1954 Ford Four-Door Sedan, Serial No. U4GG118012. A judgment will be entered for the plaintiff in accordance with the foregoing.

## JUDGMENT

Pursuant to the foregoing opinion, it is ordered, adjudged and decreed that the plaintiff, Chattanooga Discount Cor-

poration, a corporation, have and recover of the defendant, Clifton L. West, individually and doing business as West Motor Company, the sum of $13,027.50 [1], together with costs, for which execution may issue in the time and manner provided by law.

It appearing herein that Robert Hulgan was made a party defendant, but had not been served with process at the time of trial; accordingly, the case proceeded to be tried without him. Said Hulgan is severed as a party defendant herein, and the Court, pursuant to Rule 54(b), directs the entry of the foregoing final judgment in favor of Chattanooga Discount Corporation, a corporation, and against Clifton L. West, individually and doing business as West Motor Company, only, and not against Robert Hulgan, and expressly determines that there is no just reason for delay in the entry of said judgment.

---

6. When property has a fluctuating value, the Court may assess the highest value between the time of the conversion and the trial. Industrial Savings Bank v. Greenwald, 229 Ala. 529, 158 So. 734.

1. Principal $11,980.00, interest $897.50, and damages for detention $150.00, Total $13,027.50.