Irving Younger, J.
Several years ago, Herbert G. Fries died. A bank in Pennsylvania was Ms executor. The estate included various pieces of jewelry.
Defendant, a New York resident, was Mr. Fries’ heir. On December 12, 1967, in Pennsylvania, the bank delivered to him five rings worth $3,200. Defendant sold them to a Pennsylvania jeweler five months later. He did not know that the bank had made a mistake. The rings were not part of Mr. Fries’ estate; they were part of someone else’s estate.
61 August, 1969, the bank discovered its error and demanded that defendant return the rings. He did not. The bank thereupon applied to plaintiff, its surety company, to be made whole. Plaintiff paid the loss and took an assignment from the bank of the bank’s claim against defendant. On March 22, 1971, plaintiff commenced this action, in which it seeks damages of $3,200 on account of defendant’s conversion of the rings.
Each side now moves for summary judgment. The facts are conceded; the sole issue is whether the Statute of Limitations has run; and analysis starts with the cause of action.
I
Defendant did nothing consciously wrong. He accepted the rings and sold them without knowledge of the bank’s error. We learn from the cases, however, that a converter need intend nothing evil. So long as he intends to deal with the property in a way which is in fact inconsistent with the plaintiff’s right, he is a converter. (Fouldes v. Willoughby, 8 Mees. & Wels. 540, 151 Eng. Rep. 1153 [1841]; Allred v. Hinkley, 8 Utah 2d 73; Poggi v. Scott, 167 Cal. 372; see Restatement, Torts 2d § 223, comment b.)
Here, defendant intentionally took possession of the rings. The difficulty lies in the peculiar circumstance that he thought the bank, was authorized to give him the rings, and so did the bank. Neither knew that defendant’s possession of the rings was inconsistent with the bank’s right. While there is no decision in point, analogy supplies the necessary authority. If *807 a bona fide purchaser from a thief is liable in conversion to the thief’s victim (Williams & Chapin v. Merle, 11 Wend. 80; Allred v. Hinkley, supra; Culp v. Signal Van & Stor., 142 Cal. App. 2d 859), a bona fide recipient of property from one who has no power to transfer the property is also a converter. (See Restatement, Torts 2d, § 229.)
There are two views on the question when the conversion occurs. The majority rule is that the conversion is committed when the defendant takes possession of the property. (Lovinger v. Hix Green Buick Co., 110 Ga. App. 698; McRae v. Bandy, 270 Ala. 12; Hovland v. Farmers Union Elevator Co., 67 N. D. 71; Hyde v. Noble, 13 N. H. 494; Restatement, Torts 2d, § 229, comment h.) The minority rule is that the conversion is committed when the defendant fails to return the property on demand. (Burckhalter v. Mitchell, 27 S. C. 240; Parker v. Middlebrook, 24 Conn. 207.) Pennsylvania follows the majority rule. (Barker v. Dinsmore, 72 Pa. 427.) New York follows the minority rule. (Gillet v. Roberts, 57 N. Y. 28.)
Under Pennsylvania law, then, plaintiff’s cause of action accrued on December 12, 1967, when defendant received the rings.
Under New York law, plaintiff’s cause of action accrued in August, 1969, when defendant failed to respond to the bank’s demand.
II
If ‘ ‘ accrual of the cause of action ’ ’ be deemed procedural, the multi-State aspects of the case are irrelevant: the matter is automatically determined by the law of New York, the forum State. (Restatement, Conflict of Laws 2d, § 122 et seq.; Leflar, American Conflicts Law, pp. 287-315.) But if “ accrual of the cause of action ” be deemed substantive, it is determined by the law of New York or of Pennsylvania, selected in accordance with New York’s choice-of-law principles. (Ibid.; Restatement, Conflict of Laws 2d, § 145.)
The terms ‘ ‘ procedural ’ ’ and ‘ ‘ substantive ’ ’ are labels. Standing alone, they do not answer the question whether ‘1 accrual of the cause of action ’ ’ is procedural or substantive. Neither does any case. Still, by listing what has been held to be procedural (United States Mtge. & Trust Co. v. Ruggles, 258 N. Y. 32, 40 [admissibility of evidence]; Bank of China, Japan & The Straits v. Morse, 168 N. Y. 458 [pleading]; New York Life Ins. Co. v. Aitkin, 125 N. Y. 660 [form of action]; Pope v. Terre Haute Car & Mfg. Co., 87 N. Y. 137 [service of process]; Stoneman v. Erie Ry. Co., 52 N. Y. 429 [capacity to *808 sue]; Wright v. Palmison, 237 App. Div. 22 [burden of proof]; Harman v. City of Ft. Lauderdale, 134 Misc. 133 [attachment]; Colucci v. Lehigh Val. R. R. Co., 121 Misc. 758 [right to jury trial]; Whittemore v. Adams, 2 Cow. 626 [enforcement of judgment] ) one finds a rule: matters dealing with the conduct of the litigation are procedural, and' everything else substantive. See Pritchard v. Norton (106 U. S. 124, 129) (“whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum ”), quoted with approval in Franklin Sugar Refining Co. v. Lipowicz (247 N. Y. 465, 469). In this light, I hold that ‘ ‘ accrual of the cause of action ’ ’ is properly characterized as substantive. The consequence is that it must be determined by the law of New York or of Pennsylvania, selected in accordance with New York’s choice-of-law principles.
III
Before 1963, the New York choice-of-law principle for tort cases was lex loci delicti — that is, although the forum was New York, the law applicable to the ease was the law of the place of the tort. (See Restatement, Conflict of Laws, § 384.) That principle would have been useless here, for Pennsylvania law says that the tort occurred in Pennsylvania, where the rings were delivered to defendant; New York law says that it occurred in New York, where defendant failed to return them; and lex loci delicti offers no basis for preferring one to the other.
In Babcock v. Jackson (12 N Y 2d 473), New York discarded lex loci delicti in favor of the “ center-of-gravity ” or “ grouping-of-contacts ” principle. Id., p. 481: “The ( center of gravity ’ or 1 grouping of contacts ’ doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multi-State contacts. Justice, fairness and 1 the best practical result ’ * * * may best be achieved by giving controlling effect to the law of the jurisdiction which; because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.” For applications of Babcock, see Dym v. Gordon (16 N Y 2d 120): Macey v. Rozbicki (18 N Y 2d 289); Farber v. Smolack (20 N Y 2d 198); Miller v. Miller (22 N Y 2d 12); Tooker v. Lopez (24 N Y 2d 569); Neumeier v. Kuehner (31 N Y 2d 121). Each of these was a personal injury or wrongful death action arising out of an accident. No New York case, so far as I have been able to discover, applies the grouping-of-contacts principle to a non- *809 negligent tort such as conversion. But since the Court of Appeals has not intimated that its holding in Babcock is limited to negligence cases, the contacts must be grouped.
New York contacts. (1) Plaintiff is licensed to do business in New York. (2) Defendant is a New York resident. (3) Defendant failed to comply with the bank’s demand for return of the rings in New York.
Pennsylvania contacts. (1) The bank is a Pennsylvania corporation. (2) It delivered the rings to defendant in Pennsylvania. (3) Defendant sold the rings to a Pennsylvania jeweler.
And where is the center of gravity? I hardly know, perhaps because I am trying to quantify the unquantifiable (see Judge Vax Voorhis’ dissent in Babcock v. Jackson, 12 N Y 2d 473, 486, supra) or reasoning in a circle. (See Ehrenzweig, Conflict of Laws, p. 464 [1962].) There is a further test. In Babcock and the subsequent cases, the Court of Appeals talks of social policy (but cf. Neumeier v. Kuehner, supra, seeming to revert to counting of specified types of contacts). Babcock v. Jackson (12 N Y 2d 473, 478, supra): “ [Lex loci delicti) has long since been discredited because it fails to take account of underlying policy considerations * * * More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues.” So we ask whether Pennsylvania’s interest in having its law applied to this controversy is greater than New York’s? Is New York’s greater than Pennsylvania’s? Again, I do not know. Neither State, to my mind, has the slightest interest in whose law is applied to this controversy. The reason is that, by contrast with the guest statutes involved in Babcock, Dym, Macey, Tooker, and Neumeier (supra), the owner’s liability statute involved in Farber (supra), or the limitation of recovery statute involved in Miller (supra), the subject of this case is one about which the citizens of New York and of Pennsylvania are profoundly neutral.
To resolve the matter, one might read Professor Currie, “Notes on Methods and Objectives in the Conflict of Laws,” (1959 Duke L. J. 171) and, without further ado, apply the law of the forum. Or one might say that since plaintiff and defendant are New Yorkers litigating in a New York court, they would reasonably expect that the controversy be determined in accordance with New York law.
Tn any event, I hold that under New York’s choice-of-law principles, the law applicable to this case is New York’s.
*810 IV
Under New York law, defendant converted the rings in August, 1969, when the bank made a demand and defendant failed to return them. The action was commenced on March 22, 1971. Since the Statute of Limitations for conversion is three years (CPLR 214, subd. 3) “ computed from the time the cause of action accrued to the time the claim is interposed,” (CPLR 203, .subd. [a]) plaintiff argues that its suit is timely. The point is more complicated than that.
Subdivision (a) of CPLR 206 provides: “ where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete [with two exceptions not relevant here].” In short, the Statute of Limitations runs, not from the demand, but from the time when the bank was entitled to make the. demand. Were the rule otherwise, a plaintiff might extend the statute indefinitely, merely by postponing the making of a demand.
Here, the bank was entitled to make a demand on December 12,1967, the day it mistakenly gave the rings to defendant. Of course, the bank was ignorant until August, 1969, of the facts which gave it the right to make a demand. But ignorance does not stop the clock, (General Stencils v. Chiappa, 18 N Y 2d 125, 127; Guild v. Hopkins, 271 App. Div. 234, 244, affd. without opn. 297 N. Y. 477), unless the defendant engages in fraudulent or misleading conduct, ibid., which this defendant did not.
The Statute of Limitations therefore ran on December 12, 1970, three years from the time when the bank’s right to make a demand was complete. Because the action was commenced three months later, it is time-barred.
For these reasons, I deny plaintiff’s motion for summary judgment and grant defendant’s cross motion for summary judgment. The complaint is dismissed.
V
I have held that defendant committed a conversion. Had I not, the complaint would have failed to state a cause of action and been dismissed.
I have held that “ accrual of the cause of action” is substantive. Had I held it to be procedural, the law of the forum would have applied and, under subdivision (a) of CPLR 206, the complaint would have been dismissed.
I have held that, under New York’s choice-of-law principles, New York law applies. Had I not, Pennsylvania law would have *811 applied. Pennsylvania’s Statute of Limitations is six years. (12 Pa. Stat., § 31.) New York’s is three. (CPLR 214, subd. [3].) Since the “ borrowing ” statute, CPLR 202, specifies that the shorter period controls, the complaint would have been dismissed.
Behind every decision, it seems, walks the ghost of its opposite.