**Electronically Filed
Intermediate Court of Appeals
28805
30-JAN-2013
08:41 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

FREDDY NOBRIGA ENTERPRISES, INC., and
ALFRED NOBRIGA, Plaintiffs-Appellants, v.
STATE OF HAWAI'I, DEPARTMENT OF HAWAIIAN HOME LANDS,
MICAH KANE and LINDA CHINN, Defendants-Appellees

NO. 28805

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 03-1-0217)

JANUARY 30, 2013

FOLEY, PRESIDING JUDGE, FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY LEONARD, J.

This appeal stems from a dispute over cattle on the Island of Hawai'i. Plaintiffs-Appellants Freddy Nobriga Enterprises, Inc. and Alfred Nobriga (collectively, **Nobriga**) appeal from the September 13, 2007 Final Judgment of the Circuit Court of the Third Circuit (**Circuit Court**) dismissing all claims.[1] In an order filed January 20, 2005, the Circuit Court

---

[1] The Honorable Glenn S. Hara presided.

granted summary judgment against Nobriga, and in favor of Defendants-Appellees State of Hawaiʻi, Department of Hawaiian Home Lands (**DHHL**), Micah Kane (**Kane**), and Linda Chinn (**Chinn**) (collectively referred to as **Defendants**), on Nobriga's claims of conversion (Count III), intentional infliction of emotional distress (Count IV), civil conspiracy (Count VI), breach of contract/unjust enrichment (Count VIII), unconstitutional taking and denial of due process in violation of the Hawaiʻi Constitution (Count I), and punitive damages (Count VII). All remaining claims, including Nobriga's claims for trespass (Count II) and negligence (Count V) were dismissed by stipulation on September 13, 2007.

On appeal, Nobriga contends that the Circuit Court erred in: (1) granting summary judgment *sua sponte* with respect to Nobriga's claim for conversion, which is set forth in Count III of the First Amended Complaint; (2) granting Defendants' motion for summary judgment and dismissing Counts I, IV, VI and VII of the First Amended Complaint; and (3) refusing to consider the deposition testimony submitted by Nobriga in opposition to Defendants' motion.

As discussed below, we conclude that the Circuit Court did not err in refusing to consider Nobriga's unsworn, unauthenticated deposition excerpts. However, the Circuit Court erred in granting summary judgment on the conversion claim with regard to DHHL. It also erred in granting summary judgment on Nobriga's due process claim. Accordingly, we vacate its order and judgment with regard to those claims, and remand for further proceedings. In all other respects, we affirm.

I.    BACKGROUND

The dispute between the parties arises from DHHL's roundup and sale of roughly 115 head of Nobriga's cattle. Most of the essential facts, as follows, are not in dispute.

DHHL manages several thousand acres of pastoral land in the Humuula-Piihonua area on the Island of Hawai'i. For many years, DHHL leased the land for income generation. In September of 1977, DHHL issued General Lease (**GL**) No. 199 to Parker Ranch. The lease covered approximately 5,000 acres of Hawaiian Home Lands in the Humuula area, and was set to expire on August 31, 2002. That same month, DHHL issued GL No. 200 to Parker Ranch. This lease covered approximately 7,500 acres of Hawaiian Home Lands adjacent to GL 199, and it was also set to expire on August 31, 2002. Parker Ranch later assigned GL 199 and subleased GL 200 to Nobriga,[2] with DHHL's consent.

In the late 1990s, DHHL adopted a master plan for the Humuula-Piihonua area with the ultimate goal of converting the land to homesteads for its beneficiaries. It also pursued plans for koa reforestation and gorse elimination. Gorse, a noxious weed, had been a long-standing problem in the area. Because sunlight deprivation was apparently the best strategy for eliminating it, DHHL began planting mamane and pine tree seedlings. However, cattle stifled the seedlings' growth by trampling and grazing on them. DHHL therefore structured its planting windows around the expiration of the general leases. The expiration of Nobriga's leases roughly coincided with DHHL's plans to convert the land to homestead use and expand its planting projects.

DHHL later granted Nobriga a one-year extension of GL 199. It demanded that Nobriga remove the remnants of his herd that were trespassing on land previously encumbered by GL 200, which had since expired. Nobriga failed to remove all of those cattle.

In March of 2003, a protracted drought threatened Nobriga's main herd on GL 199 lands. Nobriga urgently requested

---

[2] Alfred "Freddy" Nobriga is the president and principal owner of Freddy Nobriga Enterprises, Inc.

permission from DHHL to relocate the herd to a different parcel in the Humuula area. That parcel abutted Saddle Road, which Nobriga could use to truck in water for the cattle. It appears that the parties reached an agreement after about a month of negotiations. On June 16, 2003, DHHL executed Revocable Permit (**RP**) No. 287, granting Nobriga access to about 5,000 acres next to Saddle Road. In exchange, Nobriga posted a $100,000 bond, prematurely terminated GL 199, and agreed that any cattle remaining on GLs 199 or 200 lands after May 15, 2003 would become the property of DHHL.

DHHL subsequently extended the forfeiture deadline four more times. The final deadline was July 26, 2003. By that time, Nobriga had removed substantially all of his cattle from the parcels subject to GLs 199 and 200. However, several head of cattle apparently escaped while being relocated from GLs 199 and 200 lands to the RP 287 parcel. Others also subsequently escaped from RP 287 lands. Those cattle remained in the areas surrounding RP 287 lands, which were covered by GLs 155 and 201.

In the meantime, DHHL entered into a month-to-month agreement with Sonny Keakealani (**Keakealani**) to remove cattle from certain Hawaiian Home Lands parcels. On July 21, 2003, DHHL orally notified Nobriga of the upcoming roundups. Over the weekends of July 27 and August 2, 2003, Keakealani conducted roundups on GL 201, the Humuula and Piihonua parcel surrounding RP 287. He rounded up and sold 181 head of cattle. Of that sum, at least 115 belonged to Nobriga.

Nobriga filed a First Amended Complaint on January 13, 2004. He raised eight counts: (1) unconstitutional taking and denial of due process in violation of the Hawai'i Constitution; (2) trespass; (3) conversion; (4) intentional infliction of emotional distress; (5) negligence; (6) civil conspiracy; (7) punitive damages; and (8) breach of contract/unjust enrichment. DHHL filed counterclaims alleging trespass, conversion, and

breach of contract. On November 22, 2004, DHHL filed a motion to dismiss or, in the alternative, for partial summary judgment on Nobriga's counts I, IV, VI, VII, and VIII. On January 20, 2005, the Circuit Court granted summary judgment on those counts and granted summary judgment on count III *sua sponte*. All remaining claims and counterclaims were dismissed by stipulation on September 13, 2007. Nobriga filed a timely notice of appeal on October 15, 2007.

II. POINTS OF ERROR

Nobriga raises three points of error, contending that the Circuit Court erred in: (1) granting summary judgment *sua sponte* with respect to Nobriga's claim for conversion, which is set forth in Count III of the First Amended Complaint; (2) granting Defendants' motion for summary judgment and dismissing Counts I, IV, VI and VII of the First Amended Complaint; and (3) refusing to consider the deposition testimony submitted by Nobriga in opposition to Defendants' motion.

III. STANDARDS OF REVIEW

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

Accordingly,

> [o]n appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

Iddings v. Mee-Lee, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996).

It is well settled that a motion for summary judgment may be decided "only on the basis of admissible evidence."

Takaki v. Allied Mach. Corp., 87 Hawai'i 57, 69, 951 P.2d 507, 519 (1998). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of [Hawai'i Rules of Civil Procedure Rule 56(e)] and the affiant must be a person through whom the exhibits could be admitted into evidence." Id. (internal quotation marks and brackets omitted) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil § 2722, at 58-60 (2d ed. 1983)).

In State v. West, 95 Hawai'i 452, 24 P.3d 648 (2001), the Hawai'i Supreme Court stated:

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

Id. at 456-57, 24 P.3d at 652-53 (quoting Kealoha v. County of Hawaii, 74 Haw. 308, 319-20, 844 P.2d 670, 676 (1993)). Here, the trial court's refusal to consider unauthenticated deposition transcripts, which transcripts were objected to by the opposing party, is reviewed under the right/wrong standard.

IV.  DISCUSSION

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Nobriga's points of error as follows:

A.  Nobriga's Conversion Claim

Nobriga maintains that the Circuit Court erred in granting summary judgment on Count III, the conversion claim, in contravention of the undisputed facts. With respect to the claims against DHHL, we agree.

First, however, we address the Circuit Court's conclusion that Kane and Chinn were "entitled to qualified

immunity for any and all alleged acts performed as complained of in Plaintiffs' First Amended Complaint." It granted summary judgment in their favor on that basis. As set forth below in conjunction with the discussion of Counts IV, VI, and VII, we conclude that Defendants Kane and Chinn are entitled to qualified immunity with respect to the tort claims asserted against them. As a result, the Circuit Court did not err in granting summary judgment in their favor on Count III, the conversion claim.

The Circuit Court also granted summary judgment in favor of DHHL on the conversion claim, apparently concluding that summary judgment was appropriate because Nobriga failed to provide evidence controverting Defendants' sworn statements and certified documents, even though those statements and documents were not offered to support summary judgment on Count III. A party seeking summary judgment, however, bears an initial burden of showing that (1) there is no genuine issue of material fact, and (2) he or she is entitled to summary judgment as a matter of law. Pioneer Mill Co., Ltd. v. Dow, 90 Hawai'i 289, 296, 978 P.2d 727, 734 (1999). Only when this burden is satisfied must the opposing party provide affidavits or specific evidence in rebuttal. Id.; Miller v. Manuel, 9 Haw. App. 56, 65, 828 P.2d 286, 292 (App. 1991).

Although the essential facts were largely undisputed, the record before the court did not establish that DHHL was entitled to summary judgment as a matter of law on Count III. Both parties agree that DHHL rounded up and sold cattle found on DHHL lands subject to GL 201, not on the lands covered by the forfeiture provision contained in RP 287. The Circuit Court's finding that DHHL owned the cattle found on GLs 199 and 200 lands therefore bears no relation to the conversion claim. It is undisputed that the Defendants had no contractual claim of ownership over the cattle they rounded up from GL 201 lands, which are the subject of this dispute.

7

The sole evidence tending to establish DHHL's ownership is the bare assertion of Chinn in her affidavit supporting summary judgment on the other counts. However, the reasonable inferences arising from these assertions favor Nobriga. First, Chinn's affidavit alleges that DHHL owned the cattle as a result of the forfeiture provision in RP 287. However, that provision did not cover the lands from which the cattle were taken. It was therefore inapplicable to the cattle at issue. Chinn's affidavit further alleges that DHHL owned the cattle pursuant to HRS § 142-44 (1993).[3/] This statute concerns unmarked or unbranded cattle over twelve years of age. When such cattle are running wild on another's land, the landowner may lay a valid claim of ownership over them. Id. However, DHHL presented no evidence that the cattle were unbranded or unmarked. To the contrary, it determined that 115 of the cattle belonged to Nobriga, raising the inference that those cattle were branded or marked. Finally, the affidavit asserts that DHHL owned "former Parker Ranch cattle" pursuant to an agreement with Parker Ranch. Again, the undisputed facts indicate that at least 115 cattle were not former Parker Ranch cattle, but rather belonged to Nobriga. Therefore, we cannot conclude that there were no genuine issues of material fact and that DHHL was entitled to judgment as a matter of law, on the grounds stated by the Circuit Court.

The Circuit Court also concluded that Nobriga's claim "fail[ed] to meet the essential elements of the cause of action." Yet the undisputed facts fit the elements of conversion. Conversion encompasses the following acts: "(1) A taking from

---

[3/]    HRS § 142-44 provides, in its entirety:

All cattle, horses, mules, donkeys, sheep, goats, and swine, over twelve months of age, not marked or branded, which may be running wild at any time on any lands in the State, shall belong to and be the property of the owners or lessees of the lands on which the animals are then running.

the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." Tsuru v. Bayer, 25 Haw. 693, 696 (1920). The evidence presented established a *prima facie* case that DHHL committed acts (1) and (2) of this definition by rounding up and selling Nobriga's cattle without his consent. DHHL emphasizes that it mistakenly believed its actions were lawful. However, conversion does not require wrongful intent. 18A Am. Jur. 2d Conversion § 3 (2010); Federal Ins. Co. v. Fries, 355 N.Y.S.2d 741, 744 (N.Y.City Civ. Ct. 1974). "[T]he defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant." Morissette v. United States, 342 U.S. 246, 253 (1952). "So long as he [or she] intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right, he [or she] is a converter." Fries, 355 N.Y.S.2d at 744. Thus, DHHL's mistaken belief is irrelevant. Finally, the Circuit Court noted that DHHL "acknowledged [its] mistake and offered Plaintiff compensation for the sale of its trespassing cattle." An offer to compensate after-the-fact does not undo the underlying act of conversion. Conversion may result from any wrongful exertion of dominion over another's property in denial or inconsistent with the owner's rights therein, even for an indefinite period of time. Tsuru, 25 Haw. at 697. A subsequent return of the property or a substitute for it may mitigate damages, but it does not obliterate the conversion itself. Id. at 698.

For these reasons, we conclude that the Circuit Court erred in granting summary judgment in favor of DHHL on the conversion claim set forth in Count III.[4]

---

[4]     On appeal, DHHL argues that because defendants Kane and Chinn are entitled to qualified immunity, DHHL must also be immune under the doctrine of *respondeat superior*. In Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 61-62, 647 P.2d 713, 717 (1982), the supreme court held that where a plaintiff seeks
(continued...)

B.    Nobriga's Due Process and Tort Claims

Nobriga argues that the Circuit Court erred in granting summary judgment on the civil rights claims in Count I and the tort claims in Counts IV, V, and VI.  The Circuit Court granted judgment as a matter of law in favor of Chinn and Kane, on all claims, on the grounds that "they did not act maliciously towards [Nobriga] and [were] not [motivated] by an otherwise improper purpose and are entitled to qualified immunity to any and all alleged acts performed as complained of in [the] First Amended Complaint."  We agree with the Circuit Court's qualified immunity analysis and conclusion with respect to Nobriga's tort claims, but not with respect to the civil rights claims.

1.    Qualified Immunity and the Tort Claims

We consider the Circuit Court's entry of summary judgment on Counts IV (intentional infliction of emotional distress or disturbance), VI (civil conspiracy), and VII (punitive damages) on the basis of qualified immunity.  As a threshold matter, the parties agree that Chinn and Kane acted at all times in their official capacities.  To hold a public official liable for torts committed in his or her official capacity, the plaintiff must prove that the official "was motivated by malice and not by an otherwise proper purpose." Medeiros v. Kondo, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974). Nobriga does not argue that Chinn and/or Kane were motivated by an improper purpose; instead, he alleges that they acted with malice.  However, he failed to allege malice in the pleadings or in conjunction with any admissible evidence in opposition to summary judgment.

---

⁴/(...continued)
to impose liability on the State under the doctrine of *respondeat superior*, that same theory precludes holding the State liable where its employees are immune.  Here, however, Nobriga has not premised DHHL's liability upon the theory of *respondeat superior*.  Instead, he raised the conversion claim directly against DHHL.  Hulsman is therefore inapplicable.

Nobriga contends that various facts support a finding of malice. First, he points to the Defendants' alleged failure to promptly accommodate his urgent request to relocate his cattle during the drought. The delay itself, however, is insufficient to support a finding of malice. Nobriga failed to adduce any evidence refuting the Defendants' valid reasons for the delay. His request to utilize a new portion of DHHL land implicated numerous considerations: the ongoing planting projects, the shift in land use goals from income generation to homestead use, and the negotiation of terms for the permit, among others. Certainly the defendants had no duty, contractual or otherwise, to immediately grant his request without working through those considerations. Defendants spent several weeks negotiating with Nobriga to reach a mutually agreeable solution. They ultimately granted his request and four extensions, further undermining his claim of malice.

Second, Nobriga references Defendants' refusal to allow him to drive his cattle across lands subject to Revocable Permit RP 155. Here again, Defendants had no duty to allow him any access to RP 155 lands. As with RP 287, the record shows that proper considerations informed their decision. Nobriga acknowledges that Defendants' ultimate motive in denying his request was to prevent his cattle from commingling with those of a former tenant. The cattle on the RP 155 lands were the subject of ongoing settlement negotiations with another lessee. Certainly, Defendants' desire to preserve those cattle in their status quo was not an improper purpose.

Nobriga also highlights Defendants' refusal to allow him to enter the lands surrounding RP 287 lands to recover his stray cattle. This fact alone does not lead to a reasonable inference of malice, and Nobriga did not provide any evidence, in opposition to summary judgment, supporting his claim that their motives were malicious.

Finally, the undisputed facts support the conclusion that the roundups were not motivated by malice. Defendants mistakenly believed they had the authority to round up and sell trespassing cattle. Such a mistake does not rise to the level of recklessness, ill will, or wickedness of heart necessary for malice. See Awakuni v. Awana, 115 Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007). Throughout their dealings with Nobriga, Defendants were motivated by a proper purpose: to remove the cattle in preparation for the planting projects associated with DHHL's master plan for the area. On appeal, Nobriga makes no separate argument of error concerning the entry of judgment in favor of DHHL on Counts IV, VI, and VII.[5]

Viewing the facts in the light most favorable to Nobriga, we conclude that the Circuit Court did not err in granting summary judgment as to Counts IV, VI, and VII.

2. Qualified Immunity and the Constitutional Claims

Nobriga argues that the same analysis does not apply to Nobriga's takings and due process claims and that the Circuit Court applied the wrong standard in determining that Kane and Chinn were entitled to qualified immunity on the constitutional claims set forth in Count I. Nobriga makes no factual or legal argument, however, supporting a "takings claim" against Kane and Chinn in their individual capacity and we find none. Therefore, we examine the Circuit Court's conclusion that Kane and Chinn were entitled to summary judgment with respect to alleged due process violations on the grounds that "they did not act maliciously towards [Nobriga] and [were] not [motivated] by an otherwise improper purpose and are entitled to qualified immunity

---

[5] Although not identified as a point of error, Nobriga argues that the Circuit Court erred in entering summary judgment on Count VIII, the breach of contract claim. However, Nobriga points to no evidence in the record raising a genuine issue of material fact regarding the Circuit Court's conclusion that this claim is moot because the DHHL in fact paid Nobriga the one-third of the performance bond that was requested in this count.

to any and all alleged acts performed as complained of in [the] First Amended Complaint."

The Hawai'i Supreme Court has recognized two different standards of qualified immunity for nonjudicial public officials. For tort claims, the plaintiff has the burden of proving, by clear and convincing evidence, that the public official "was motivated by malice and not by an otherwise proper purpose." Medeiros, 55 Haw. at 504, 522 P.2d at 1272. However, for claims alleging civil rights violations, Hawai'i courts have looked to the qualified immunity standard applicable to claims brought under 42 U.S.C. § 1983. Brown v. Thompson, 91 Hawai'i 1, 14, 979 P.2d 586, 599 (1999) (quoting Pele Defense Fund v. Paty, 73 Haw. 578, 595, 837 P.2d 1247, 1259 (1992), cert. denied, 507 U.S. 918 (1993)). Under that standard, public officials in their individual capacities are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts must analyze claims of qualified immunity under two prongs: (1) whether the facts show a violation of a constitutional right; and (2) if the first step is satisfied, whether that right was clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citations omitted). In conducting this analysis, we must view the facts in the light most favorable to Nobriga and draw all reasonable inferences in his favor. Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated on other grounds by Pearson, 533 U.S. at 236.

Nobriga alleges that Chinn and Kane violated his right to due process. "The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest." Sandy Beach Defense Fund v.

City Council of City and County of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). In determining the specific procedures necessary to satisfy due process, we must balance several factors: "(1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail." Id.

The Hawai'i Supreme Court has discussed the contours of procedural due process in the analogous context of impounding a derelict vessel. Brown, 91 Hawai'i 1, 979 P.2d 586. In Brown, the State impounded the plaintiff's vessels pursuant to statutory authority. Id. at 4-7, 979 P.2d at 589-92. The State provided the plaintiff with prior written notice. Id. at 10, 979 P.2d at 595. However, given the property interests at stake, the court held that this alone was insufficient to meet the requirements of due process. Id. at 12-13, 979 P.2d at 597-98. It held that before impounding the vessels, the state was required to provide more specific notice "inform[ing] affected parties of the action about to be taken against them as well as of procedures available for challenging that action." Id. at 10, 979 P.2d at 595. Additionally, it held that the State "must provide a hearing to owners of derelict vessels as soon as reasonably possible following a vessel's impoundment." Id. at 12, 979 P.2d at 597.

Here, Defendants' actions in impounding Nobriga's cattle are parallel to the State's impounding of derelict vessels in Brown. Just as the State acted pursuant to statutory authority in Brown, it appears that Defendants here mistakenly believed they possessed legal authority to confiscate and sell the trespassing cattle. As in Brown, Defendants did not merely remove the cattle for a time. Instead, they permanently deprived Nobriga of a significant property interest. Given the weight of

private interests at stake, the risk of erroneous deprivation, and the governmental interests, the procedural requirements of <u>Brown</u> are applicable in this case. Nobriga was entitled to adequate prior notice and an opportunity to be heard. <u>Brown</u>, 91 Hawai'i at 12, 979 P.2d at 597.

Defendants provided Nobriga with prior oral notice that roundups would soon be taking place.[6/] Under <u>Brown</u>, however, this notice was inadequate. Nobriga was entitled to prior written notice stating with precision the actions to be taken and procedures available for challenging them. <u>Id.</u> at 12, 979 P.2d at 597.

Although Defendants ultimately offered to compensate Nobriga, their offer came only after the cattle had already been sold. Moreover, their change of heart did not negate the deliberate deprivation that occurred. <u>See Daniels v. Williams</u>, 474 U.S. 327, 331 (1986) (recognizing that officials' actions need only be "deliberate" under 18 U.S.C. § 1983).

We therefore conclude that the evidence before the Circuit Court made out a claim that the Defendants violated Nobriga's right to procedural due process.

Having determined that the facts make out a violation of Nobriga's constitutional right, we now turn to whether the right was clearly established. <u>Pearson</u>, 555 U.S. at 232. Qualified immunity protects officials whose "actions could reasonably have been thought consistent with the rights they are alleged to have violated." <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). This is an objective standard that pertains to the law at the time the action was taken. <u>Id.</u> The unlawfulness of the action must have been apparent. <u>Id.</u> at 640. However, it is

---

[6/]    In its memorandum in support of its motion for summary judgment, Defendants asserted they provided Nobriga with oral and written notice. However, the evidence in the record indicates they only provided him with oral notice.

not necessary for the "very action in question" to have been previously held unlawful. Id.

Although this standard provides "ample room for mistaken judgments," it protects only "*reasonable* error." Brown, 91 Hawai'i at 16, 979 P.2d at 601 (emphasis added) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). If an official "knew or *should have known*" that his or her action violated a constitutional norm, immunity is unavailable. Procunier v. Navarette, 434 U.S. 555, 562 (1978) (emphasis added).

In assessing whether a right was "clearly established," we must frame the inquiry with particularity. Anderson, 483 U.S. at 639-40. We must evaluate the right "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. The question so framed is whether Kane and Chinn violated a clearly established procedural due process right by depriving Nobriga of his trespassing cattle without adequate prior notice or an opportunity to be heard.

Although we have found no Hawai'i case law regarding the confiscation of trespassing cattle, these facts closely correspond to cases involving the state's impoundment of personal property. Brown is therefore instructive. In that case, the State impounded the plaintiffs' watercraft in contravention of the requirements of due process. 91 Hawai'i at 10, 12-13, 979 P.2d at 595, 597-98. The court held that the state's actions were nonetheless reasonable because the law regarding due process requirements for impounding derelict vessels had not been clearly established. Id. at 15, 979 P.2d at 600. At that time, no case law or statutes delineated the due process requirements for impounding property. Id. The plaintiff could not point to any "closely corresponding factual and legal precedent." Id. (internal quotation marks omitted). The court recognized that "[h]ad there been a clearly established body of case law

regarding the right to a hearing," immunity would not have been available.  Id.

In the instant case, Brown had been decided well before Defendants conducted the roundups.  It should have been readily apparent that the State cannot impound property, including cattle, absent the due process requirements outlined in Brown. Moreover, in Brown, the governing statute was silent as to any requirements for a hearing.  Id.  Here, by contrast, HRS §§ 142-71 (1993) and 142-99 (1993) set forth procedural requirements for impounding cattle.  Although broader in scope than the statutes at issue in Brown, these statutes are directly applicable.  Section 142-71 allows landowners to impound trespassing cattle only if the owner refuses to pay the trespassing fees assessed or if the owner is unknown.[7]  Section 142-99 requires "any person who exerts control over a lost animal" to "immediately notify the owner of the animal, if known."[8]  No case law elaborates on these provisions, but none is necessary to elucidate their straightforward requirements.  Defendants' actions were in direct contravention of the statutes' plain language.  See Wong v. City

---

[7]    HRS § 142-71 provides:

     **§ 142-71. Procedure to recover animals; owner notified before impounding.**  Where any animals are taken up for trespass, the owner, if known, shall be immediately notified, if reasonably practicable, of the fact, and of the amount of damage and trespass fees claimed, and if the owner refuses or fails to pay the legal charges, or in case the owner is unknown, then the animals shall be impounded forthwith.

[8]    HRS § 142-99 provides, in part:

     (a) Except as otherwise provided in section 143-10 [regarding stray dogs], any person who exerts control over a lost animal shall immediately notify the owner of the animal, if known, or an animal control officer of the local humane society chapter of the county in which the animal is found and release the animal to the owner, animal control officer, or humane society chapter. For purposes of this section, "exert control" means any act which constrains an animal including leashing, chaining, or otherwise confining an animal.

and County of Honolulu, 333 F. Supp. 2d 942, 956 n.29 (2004) (noting that state actor's conduct would be unreasonable if in direct contravention of statutory requirements). Defendants Chinn and Kane should have known their actions violated statutory requirements and due process. As a result, the Circuit Court erred in concluding they were entitled to qualified immunity.

We therefore conclude that the individual Defendants are not entitled to qualified immunity as to the due process claim of Count I, and no other grounds in favor of summary judgment having been presented, the Circuit Court erred in granting summary judgment on that claim.

3. Nobriga's Takings Claim against DHHL

Thus, we turn to the Circuit Court's granting of summary judgment in favor of Defendants on Nobriga's claim that DHHL effected an unconstitutional taking. The Fifth Amendment of the United States Constitution, as well as Section 20, Article I of the Hawai'i State Constitution, prohibits the State from taking private property absent a public purpose and just compensation. Had Defendants complied with the statutory provisions for impounding cattle, their "taking" would have been a "lawful exercise of police power" unencumbered by the just compensation requirement. Brown, 91 Hawai'i at 13, 979 P.2d at 598. Instead, Defendants acted pursuant to a mistaken belief that they had legal authority to impound the cattle. Despite this mistake, we must examine the purpose of the taking, "not its mechanics." Kelo City of New London, Conn., 545 U.S. 469, 482 (2005) (quoting Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 244 (1984)).

The uncontested facts support the conclusion that Defendants' purpose in clearing out the cattle was to advance DHHL's goals in proceeding with its planting projects and ultimately converting the land to homestead use. This was certainly a public purpose sufficient to justify a taking. See

<u>Midkiff</u>, 467 U.S. at 245 (law condemning real property and transferring it to tenants satisfied public purpose requirement).

After the cattle had been sold, Defendants offered to compensate Nobriga. Although Nobriga disputed the value of the compensation, Defendants outlined a procedure for substantiating his claim. Nobriga failed to take advantage of that procedure. In opposing summary judgment, Nobriga did not produce any evidence that the proffered compensation or the procedure for verifying the value of the cattle were inadequate. There was no genuine issue of material fact on this issue. Nobriga failed to establish that the Defendants' actions violated his constitutional rights under the takings clause in either the Hawai'i Constitution or the United States Constitution.

C.   <u>The Deposition Excerpts</u>

Nobriga contends that the Circuit Court erred in refusing to consider the unsworn deposition excerpts he offered in opposition to Defendants' partial summary judgment motion. Although Nobriga failed to request a transcript of the hearing on Defendants' motion, it otherwise appears from the record that Defendants objected to the admission of Nobriga's deposition excerpts on the grounds that they were unsworn and unauthenticated. The Circuit Court therefore concluded they were inadmissible. <u>See Kutcher v. Zimmerman</u>, 87 Hawai'i 394, 398, 957 P.2d 1076, 1081 (App. 1998) (recognizing that court may not consider unsworn and uncertified deposition excerpts over objection); <u>Tradewind Ins. Co., Ltd. v. Stout</u>, 85 Hawai'i 177, 180, 938 P.2d 1196, 1199 (App. 1997) (same); <u>Fuller v. Pacific Medical Collections, Inc.</u>, 78 Hawai'i 213, 224, 891 P.2d 300, 311 (refusing to consider unauthenticated and unsworn documents); <u>Wolfer v. Mut. Life Ins. Co.</u>, 3 Haw. App. 65, 68, 641 P.2d 1349, 1352 (1982) (same); <u>DeMund v. Lum</u>, 1 Haw. App. 443, 445, 620 P.2d 270, 272 (1980) (recognizing that Rule 56 requires documents to be sworn to or certified). The Circuit Court properly sustained

Defendants' objection and refused to consider the unauthenticated deposition excerpts in ruling on the motion for summary judgment.

V.    CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part the Circuit Court's September 13, 2007 Final Judgment. Consistent with this Opinion, we remand for further proceedings on Nobriga's due process claim in Count I and Nobriga's conversion claim against DHHL in Count III of the First Amended Complaint, and affirm the Circuit Court's Final Judgment in all other respects.

On the briefs:

Walter R. Schoettle
for Plaintiffs-Appellants

Diane K. Taira
Deputy Attorney General
for Defendants-Appellees