FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000496
31-JUL-2015
08:01 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---o0o---

NEIL YONEJI, Successor Trustee of the Mitsuo Yoneji
Revocable Trust Dated November 27, 1985 and
NEIL YONEJI and CLAIRE YONEJI, individually and as
Trustees of the Yoneji Revocable Family Trust
Dated August 31, 1998, Plaintiffs-Appellants,
v.
CHARLENE YONEJI, Defendant-Appellee
v.
MARY KAZUMI YONEJI, JOHN DOES 1-10, JANE DOES 1-10, DOE
PARTNERSHIPS, CORPORATIONS OR ENTITIES 1-20, Defendants

NO. CAAP-14-0000496

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 09-1-0282)

JULY 31, 2015

FOLEY, Presiding J., REIFURTH, AND GINOZA, JJ.

OPINION OF THE COURT BY FOLEY, J.

Plaintiff-Appellant Neil Yoneji, Successor Trustee of
the Mitsuo Yoneji Revocable Trust Dated November 27, 1985 (**Mitsuo
Trust**) and Neil Yoneji (**Neil**) and Claire Yoneji, individually and
as Trustees of the Yoneji Revocable Family Trust Dated August 31,

1998 (**Yoneji Family Trust**) (collectively, **Yonejis**) appeal from the Circuit Court of the Fifth Circuit's[1] (**circuit court**):

> (1) "Amended Judgment (Amends the Judgment Filed May 1, 2013)," filed January 27, 2014;
>
> (2) "Judgment," filed May 1, 2013; and
>
> (3) "Order Granting Defendant Charlene Yoneji's Motion for Summary Judgment (Filed 2/22/13)," (**Order**) filed May 1, 2013.

On appeal, the Yonejis contend that (1) the circuit court erred in granting a motion for summary judgment in favor of Defendant-Appellee Charlene Yoneji (**Charlene**) and (2) the circuit court abused its discretion in awarding Charlene attorneys' fees and costs.

## I. BACKGROUND

This case involves a family trust, the Mitsuo Trust, that is funded by rental income generated from two income-producing properties (together, **Properties**) that were originally owned by grantor, Mitsuo Yoneji (**Mitsuo**). The Mitsuo Trust left interests in the Properties to Mitsuo's two sons, Neil and Owen Yoneji (**Owen**), and any children Mitsuo's sons may have had. Owen was married to Charlene and had one child, Mary Yoneji (**Mary**).

Four family trusts owned the Properties in varying percentages: the Mitsuo Trust, the Revocable Trust of Owen Kazuo Yoneji, dated January 11, 1994 (**Owen Trust**), the Revocable Trust of Charlene Tsuruko Yoneji, dated January 11, 1994 (**Charlene Trust**), and the Yoneji Family Trust. According to Neil, all profits and expenses related to the Properties were handled through a single trust bank account at the First Hawaiian Bank (**Mitsuo Trust Account**), which operated under the Mitsuo Trust. Neil and Owen served as Successor Individual Co-Trustees of the Mitsuo Trust. Mary was not properly appointed Successor Individual Co-Trustee of the Mitsuo Trust.

Mary declared that on or about April 11, 2008, per Owen's instructions, she issued a bank check payable to Charlene in the amount of $67,031.14 from the Mitsuo Trust Account without the authorization of Neil. Charlene endorsed the check to Owen

---

[1]     The Honorable Kathleen N.A. Watanabe presided.

and returned it to Mary, who then deposited the check into a Kaua'i Government Federal Credit Union account to which Neil alleges he did not have access.

On October 26, 2009, the Yonejis filed this lawsuit, alleging that Mary and Charlene improperly depleted the Mitsuo Trust Account, and wrongfully redirected the rental income from the Properties, which were co-owned by the various family trusts, to Mary in her personal capacity. The Yonejis also alleged that Charlene was liable for conversion, unjust enrichment, conspiracy, constructive fraud, constructive trust, and prima facie tort for her involvement. On December 22, 2009, Mary and Charlene filed their Answer. On March 14, 2012, Mary's attorney turned over $152,772.46 to the circuit court pending the conclusion of litigation. Mary claims that the interpled funds included the $67,031.14 taken from the Mitsuo Trust Account.

On May 1, 2012, the circuit court filed a "Stipulation For Appointment Of A Special Master." The Special Master was tasked with the following:

1. [Conducting] an audit of the assets, revenues, and expenses of the [Properties] from March 1, 2008 to present.

2. [Determining] the interests of the co-owners of the [Properties] and their past and present entitlement to profits and responsibility for expenses.

3. [Determining] the final account among the co-owners, taking into consideration all distributions and the proceeds/credit from the sale of the [Properties].

4. [Determining] the parties' rights to the amounts related to the [Properties] held, in custody and/or control by any of the parties and the clerk of the Court.

All parties also agreed that "the trier of fact shall rely on the report of the Special Master in determining the amounts, if any, owed by and between all parties in [this] entitled action, subject to their determination of any disputed genuine issue of material fact (as set forth by the Court) [.]" On July 30, 2012, the circuit court issued its "Order Setting Trial Date" that ordered all exhibits to be delivered to the court and served by March 8, 2013.

On February 22, 2013, Charlene filed her Motion for Summary Judgment (**MSJ**), which included a request for an award of

attorneys' fees and costs pursuant to Hawaii Revised Statutes (**HRS**) § 607-14.5 (Supp. 2014). On March 25, 2013, the Yonejis filed their Opposition to the MSJ. In the Opposition, the Yonejis withdrew all claims made in their individual capacities and argued that genuine issues of material fact remain, which would preclude summary judgment.

On April 2, 2013, the circuit court held a hearing on the MSJ. During the hearing, the Yonejis noted to the court that many of the material issues in the case had not yet been determined because the Special Master had not yet issued his report. The circuit court orally granted the MSJ, finding "I don't understand why the master is taking as long as he is. But I don't -- I cannot imagine there would be something that the master would find in his focus and in his perspective regarding the accounting that would have any impact on the claims against Charlene Yoneji." In granting the MSJ, the circuit court noted that it was "adopting in full" the arguments that Charlene's counsel made in support of her MSJ.

On May 1, 2013, the circuit court reduced its decision to the written Order and Judgment. The court's Order also found that the Yonejis' claims against Charlene were frivolous and awarded Charlene reasonable attorneys fees of $49,117.33 and costs of $2,948.60. On January 27, 2014, the circuit court entered an Amended Judgment in favor of Charlene on all claims asserted by the Yonejis, pursuant to Rule 54(b) of the Hawai'i Rules of Civil Procedure.

On February 25, 2014, the Yonejis filed a timely notice of appeal.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of

> a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 56, 109 P.3d at 697 (quoting Durette v. Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

The Hawai'i Supreme Court has set forth the following burden-shifting paradigm for situations where the non-movant bears the burden of proof at trial:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Ralston v. Yim, 129 Hawai'i 46, 56-57, 292 P.3d 1276, 1286-87 (2013) (quoting French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004)).

> [A] summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant [sic] will be unable to carry his or her burden of proof at trial. Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial. Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded.

Ralston, at 60-61, 292 P.3d at 1290-91 (citations and emphasis omitted).

## B. Award of Attorneys Fees and Costs

> This court reviews a lower court's award of attorneys' fees for abuse of discretion. Allstate Ins. Co. v. Pruett,

118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008) (citation omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quoting Lepere v. United Pub. Workers, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)). In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999)).

Hart v. Ticor Title Ins. Co., 126 Hawai'i 448, 455, 272 P.3d 1215, 1222 (2012).

## III.  DISCUSSION

### A.  Conversion

The Yonejis contend the circuit court erred in granting summary judgment in favor of Charlene as to their conversion claim against her.

> Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession permanently or for an indefinite time.

Tsuru v. Bayer, 25 Haw. 693, 697 (Haw. Terr. 1920)  "Conversion encompasses the following acts: '(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'"  Freddy Nobriga Enterprises, Inc. v. State, Dep't of Hawaiian Home Lands, 129 Hawai'i 123, 129, 295 P.3d 993, 999 (App. 2013) (quoting Tsuru, 25 Haw. at 696); see also Sung v. Hamilton, 710 F. Supp. 2d 1036, 1044 (D. Hawai'i 2010); Pourny v. Maui Police Dep't, Cnty. of Maui, 127 F. Supp. 2d 1129, 1146 (D. Hawai'i 2000).

Although Charlene declared in her affidavit that she did not intend to steal money from the Mitsuo Trust Account, such an intent was not necessary to support the Yonejis' conversion claim.  See Freddy Nobriga, 129 Hawai'i at 130, 295 P.3d at 1000 (holding that the Department of Hawaiian Home Lands' mistaken belief that they owned defendant's cattle by reason of forfeiture was irrelevant to the defendant's conversion claim against the agency).  Hawai'i caselaw provides that "the defendant's knowledge, intent, motive, mistake, and good faith are generally

6

irrelevant" to a conversion claim. Id. (quoting Morissette v. United States, 342 U.S. 246, 253 (1952)). See also Freddy Nobriga, 129 Hawai'i at 130, 295 P.3d at 1000 ("So long as he [or she] intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right, he [or she] is a converter." (quoting Federal Ins. Co. v. Fries, 78 Misc.2d 805, 806 (N.Y. Civ. Ct. 1974))).

In Fries, the defendant was an heir to the decedent's estate. The bank delivered to the defendant five rings worth $3,200, which the bank believed to be a part of the estate. The defendant then sold the rings to a jeweler five months later. Unbeknownst to the defendant, the bank had made a mistake and the rings were not part of the decedent's estate -- they were a part of someone else's estate. Two years after the defendant received the rings, the bank discovered its error and demanded the defendant return the rings. The defendant refused. The bank then assigned its claim against the defendant to a surety company. The surety company sought damages against the defendant for $3,200 on account of the defendant's conversion of the rings. Fries, 78 Misc.2d at 806.

The Fries court held that the defendant was liable for conversion of the rings, even though "[the defendant] did nothing consciously wrong" and "accepted the rings and sold them without knowledge of the bank's error." Id. The Fries court opined that "a converter need intend nothing evil" and that "[s]o long as he intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right, he is a converter." Id. The Fries court held that the defendant's intentional possession of the rings was sufficient to support the surety company's conversion claim against the defendant.

Similarly here, Charlene need not have intended to steal money from the Mitsuo Trust Account, she only needed to have "intend[ed] to deal with the property in a way which is in fact inconsistent" with the property rights of another. See id. Charlene failed to offer any affirmative evidence showing that the Yonejis did not have an ownership interest in the funds in the Mitsuo Trust Account or that Charlene's endorsement of Mary's

check was not inconsistent with the Yonejis' ownership interest. See Ralston at 60, 292 P.3d at 1290.

Furthermore, Charlene failed to demonstrate that the Yonejis would be unable to carry their burden of proof at trial. See id. The MSJ contended that "[the Yonejis] must show there are genuine issues of material facts as to all four (4) elements, but have failed to meet this burden for *any one (1)* of the same." (Emphasis in original.) In essence, the MSJ argued that because the Yonejis had not placed proof in the record, summary judgment was appropriate. This is a mischaracterization of the applicable standard.

As the movant, Charlene carried the initial burden of proof, as well as the ultimate burden of persuasion to show the circuit court that no genuine issue of material fact existed and that she was entitled to summary judgment as a matter of law. See Ralston, 129 Hawai'i at 57, 292 P.3d at 1287. Furthermore, "a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded." Id. at 61, 292 P.3d at 1291. In order for Charlene to demonstrate the Yonejis were unable to carry their burden of proof at trial, she was required to not only show that the Yonejis had not placed proof in the record, but also that they would be unable to offer proof at trial. Id.

At the time Charlene submitted her MSJ, all parties were still waiting for a stipulated report from a Special Master who was tasked with

1. [Conducting] an audit of the assets, revenues, and expenses of the [Properties] from March 1, 2008 to present.

2. [Determining] the interests of the co-owners of the [Properties] and their past and present entitlement to profits and responsibility for expenses.

3. [Determining] the final account among the co-owners, taking into consideration all distributions and the proceeds/credit from the sale of the [Properties].

4. [Determining] the parties' rights to the amounts related to the [Properties] held, in custody and/or control by any of the parties and the clerk of the Court.

8

Both parties had agreed that "the trier of fact shall rely on the report of the Special Master in determining the amounts, if any, owed by and between all parties in [this] entitled action, subject to their determination of any disputed genuine issue of material fact (as set forth by the Court)[.]" In brief, the Special Master's report was intended to determine just the type of genuine issues of material fact that the MSJ claimed did not exist.[2] Therefore, the MSJ failed to show the Yonejis would have been unable to offer proof in support of their conversion claim at trial and the circuit court erred in granting summary judgment in Charlene's favor. See Ralston at 61, 292 P.3d at 1291.

**B. Unjust Enrichment**

The Yonejis contend the circuit court erred in granting summary judgment in favor of Charlene as to the unjust enrichment claims against her.

> Unjust enrichment, as a claim for relief, is not clearly defined in either the Hawaii Revised Statutes or our jurisprudence. As far as we can tell, our best explanation of unjust enrichment has been as follows:
>
>> It is a truism that "[a] person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or [choses] in action, . . . , or in any way adds to the other's security or advantage." Restatement of Restitution § 1 comment b (1937). One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust. Id. § 1 comment a. And it is axiomatic that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Id. § 1. We realize unjust enrichment is a broad and imprecise term defying definition. But in deciding whether there should be restitution here, we are guided by the underlying conception of restitution, the prevention of injustice. See A. Denning, The Changing Law 65 (1953).

Durette, 105 Hawai'i at 502, 100 P.3d at 72 (emphasis omitted) (quoting Small v. Badenhop, 67 Haw. 626, 635-36, 701 P.2d 647, 654 (1985)); See Porter v. Hu, 116 Hawai'i 42, 55, 169 P.3d 994, 1007 (App. 2007). A "claim for unjust enrichment requires only

---

[2] We note that during the April 2, 2013 hearing on the MSJ, the Yonejis repeatedly argued that the circuit court should wait for the Special Master's report before ruling on the MSJ. We construe the Yonejis' statements as an oral request for continuance under Hawai'i Rules of Civil Procedure Rule 56(f). Given the significance of the Special Master's report to the determination of material facts in the Yonejis' case against Charlene, the circuit court should have at least waited until the Special Master's report was issued before ruling on the MSJ.

that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." Durette, 105 Hawai'i at 504, 100 P.3d at 74 (internal quotation marks, citations, and brackets omitted). The Yonejis claim that Charlene received an unjust benefit from her involvement in removing money from the Mitsuo Trust Account.

The MSJ contended that "Charlene did not keep, use, retain, or benefit from those funds." In support of her MSJ, Charlene pointed to a transcript of Neil's January 11, 2013 deposition to show that "[Neil] does not know if Charlene used any of the funds for her own or anyone else's benefit." During Neil's deposition, Charlene's counsel elicited the following responses from Neil:

> Q: Do you know whether or not she used any of those funds personally for her benefit or in any way?
>
> A: I don't know. I don't not know where the funds are.
>
> Q: Okay. You have no knowledge if she used those funds at all, correct?
>
> A: No. The answer is no. I have no knowledge.
>
> Q: Okay. Has anybody told you or do you have any other information from anyone else that would lead you to believe that she used the funds for her own benefit or anybody else's benefit?
>
> A: Do I know? No.

As we have mentioned supra, Charlene cannot satisfy her initial burden of production by merely pointing to the Yonejis' lack of evidence in the record, especially because the Special Master's report was still outstanding. See Ralston at 60-61, 292 P.3d at 1290-91. Therefore, the MSJ failed to satisfy her burden of production and the circuit court erred in granting summary judgment in favor of Charlene as to the Yonejis' unjust enrichment claim.

## C. Constructive Fraud

The Yonejis contend the circuit court erred in granting summary judgment in favor of Charlene as to their constructive fraud claim. "Constructive fraud is defined as an act done or

omitted which is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence, even though the act is not done or omitted with an actual design to perpetrate actual fraud or injury." Wolfer v. Mut. Life Ins. Co. of New York, 3 Haw. App. 65, 76, 641 P.2d 1349, 1357 (1982).

"Constructive fraud is characterized by the breach of fiduciary or confidential relationship." Aames Funding Corp. v. Mores, 107 Hawai'i 95, 104, 110 P.3d 1042, 1051 (2005) (quoting Honolulu Fed. Sav. & Loan Ass'n v. Murphy, 7 Haw. App. 196, 201 n.6, 753 P.2d 807, 811 n.6 (1988)). "Relationships between trustee and beneficiary, principal and agent, and attorney and client are familiar examples in which the principle of fiduciary or confidential relationship applies in its strictest sense." Wolfer, 3 Haw. App. at 76 641 P.2d at 1357; see Silva v. Bisbee, 2 Haw. App. 188, 190, 628 P.2d 214, 216 (1981) (holding that constructive fraud occurred where brokers with a fiduciary relationship with their client failed to disclose to the client their pecuniary interest in the purchase of the property). "Its operation, however, is not limited to dealings between parties standing in such relations, but extends to all instances when a fiduciary or confidential relation exists as a fact, in which there is confidence reposed on one side and a resulting superiority and influence on the other." Wolfer, 3 Haw. App. at 76-77, 641 P.2d at 1357.

The MSJ argued that Charlene was "entitled to summary judgment since she did not engaged [sic] in any conduct that can be viewed as a fraud or because of its detrimental effect upon the public interests and public or private confidence, she did not benefit from any alleged wrongful conduct, and she did not take advantage of or breach any special/confidential/fiduciary relationship." In support of the allegations in the MSJ, Charlene only cited to Neil's deposition, indicating that at the time he did not know whether Charlene received any benefit from endorsing the check to Owen, and Charlene's own affidavit, denying that she stole money from the Mitsuo Trust Account. The MSJ presented no affirmative evidence that would negate the

Yonejis' claim against Charlene nor did she show that the Yonejis would be unable to place proof in the record necessary for their constructive fraud claim at trial. See Ralston at 60-61, 292 P.3d at 1290-91. Charlene again did not satisfy her initial burden of production and therefore failed to show that no genuine issue of material fact existed to warrant summary judgment as a matter of law.

**D. Conspiracy**

The Yonejis claim the circuit court erred in granting summary judgment in favor of Charlene as to their conspiracy claim because "[t]he summary judgment evidence considered by the Circuit Court in this case established that Charlene engaged in a civil conspiracy – or, at the very least, that genuine issues of material fact precluded summary judgment."

"Generally speaking, 'the accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999), superseded by statute on other grounds as stated in Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 430, 228 P.3d 303, 310 (2010); see Menashe v. Bank of New York, 850 F. Supp. 2d 1120, 1138 (D. Hawai'i 2012). "Because 'there can be no civil claim based upon a conspiracy alone,' a plaintiff must allege an underlying actionable claim." Menashe, 850 F. Supp. 2d at 1138 (quoting Weinberg v. Mauch, 78 Hawai'i 40, 49, 890 P.2d 277, 286 (1995)); see Ellis v. Crockett, 51 Haw. 45, 57, 451 P.2d 814, 822-23 (1969) (holding that the plaintiffs' failure to allege an underlying claim of deceit precluded them from alleging conspiracy to deceive).

The MSJ contended Charlene was entitled to summary judgment on the Yonejis' conspiracy claim because "there is no actionable or underlying claim against Charlene and there was never any criminal or unlawful purpose of any act by Charlene. There was no unjust enrichment, conversion, or constructive

fraud." Because we hold the circuit court erred in granting summary judgment as to the Yonejis' conversion, unjust enrichment, and constructive fraud claims, Charlene's argument is without merit. The MSJ presented no affirmative evidence to negate the Yonejis' conspiracy claim nor did Charlene show that the Yonejis would be unable to place proof in the record necessary for their claim. See Ralston at 60-61, 292 P.3d at 1290-91. Therefore, summary judgment as to the Yonejis' conspiracy claim was also erroneous.

**E.   Prima Facie Tort**

The Yonejis contend the circuit court erred in granting summary judgment in favor of Charlene as to their prima facie tort claim against her. The Yonejis cite to this court's opinion in Giuliani v. Chuck, 1 Haw. App. 379, 620 P.2d 733 (1980) in support of their prima facie tort claim against Charlene. The MSJ fails to cite to any facts in favor of summary judgment, but instead, states that "[the Yonejis'] claim of a 'prima facie tort' is unclear to Charlene's counsel. However, to the extent it may be a cognizable claim, it is not supported by any evidence that raises any genuine issue of material fact for any tortious conduct on the part of Charlene."

In Giuliani, plaintiffs brought suit against a homeowner's attorney for allegedly willfully usurping their rights to a contract and refusing to return their $1,000 deposit after the sale of the homeowner's home to the plaintiffs fell through. Giuliani, 1 Haw. App. at 381-82, 620 P.2d at 735-36. The plaintiffs claimed that the attorney's actions compelled them to "needlessly enter into litigation to defend their property and rights which, in turn, caused [them] mental anguish as well as deprivation of enjoyment over a long period of time." Id. at 382, 620 P.2d at 736. The plaintiffs alleged no other cause of action against the attorney. Id. at 386, 620 P.2d at 738. This court held that, pursuant to Restatement (Second) of Torts § 871 (§ 871), the plaintiffs had sufficiently pled a cause of action for "intentional harm to a property interest," which this court determined was a cognizable cause of action sounding in tort.

13

Guiliani, 1 Haw. App. at 386, 620 P.2d at 738. In support of its decision, this court cited to § 871, which provides that

> [o]ne who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances.

Id. Notably, this court justified its conclusion that the plaintiffs had sufficiently pled a cause of action under § 871 by noting that the plaintiffs insufficiently pled any other cause of action. Id. Ultimately, this court remanded the case back to the circuit court for further proceedings consistent with the opinion. Id.

It is unclear whether the Giuliani court intended to create a broad prima facie tort claim, as the Yonejis suggest, or whether that court intended to create a narrow intentional tort for "intentional harm to a property interest," under § 871, when similar facts arise. The Hawai'i Supreme Court has not addressed this issue and no other State court has cited to § 871 as a separate tort.

Upon further review of Giuliani's facts and analysis, we hold that Giuliani did not create a broad prima facie tort cause of action, as the Yonejis suggest. Instead, this court recognized a cause of action for intentional harm to a property interest, under § 871, that narrowly applies to cases that are factually similar to Giuliani and where no other well-recognized causes of action are pled to address the alleged harm. See Giuliani, 1 Haw. App. at 386, 620 P.2d at 738.

Here, the Yonejis' prima facie tort claim states:

**COUNT IV**
**PRIMA FACIE TORT**

39. Paragraphs 1 through 38 are incorporated herein by reference as though fully realleged hereat [sic].

40. The foregoing acts and omissions of Defendants, acting in concert and/or with one or more Doe Defendants, were unjustified and performed with intent to cause injury to the interests of Plaintiffs.

41. Additionally, Defendants acting in concert and/or with one or more Doe Defendants, are jointly and severally liable for damages suffered by Plaintiffs as a result of the aforementioned unjustified acts.

14

42. As a direct and proximate result of the aforesaid prima facie tort, Plaintiffs have suffered and are entitled to recover compensatory damages from the above-named Defendants and/or one or more Doe Defendants, including special, general, consequential and punitive damages in an amount to be proven at trial, together with an award of reasonable attorneys' fees, costs and interest.

The financial harm alleged in the Yonejis' complaint could be remedied by the Yonejis' conversion claim against Charlene. See Freddy Nobriga, 129 Hawai'i at 130, 295 P.3d at 1000. Therefore, under our interpretation of Giuliani, the Yonejis' prima facie tort claim must fail as a matter of law. See Giuliani, 1 Haw. App. at 386, 620 P.2d at 738. The circuit court did not err in granting summary judgment in favor of Charlene as to the Yonejis' prima facie tort claim.

## F. Constructive Trust

The Yonejis contend the circuit court erred when it granted summary judgment on their constructive trust claim in favor of Charlene because a genuine issue of material fact remained as to whether "all the original monies taken from the original Mitsuo Trust Account had been interpled with the court, and, therefore, whether a constructive trust would still need to be imposed on additional funds." The Yonejis argue that there was no way of knowing whether all the money from the Mitsuo Trust Account had been accounted for at the time that Charlene submitted her MSJ, because all parties were still waiting for the Special Master's report.

"A constructive trust will be imposed where the evidence is clear and convincing that one party will be unjustly enriched if allowed to retain the entire property." Maria v. Freitas, 73 Haw. 266, 274, 832 P.2d 259, 264 (1992). The only argument Charlene made in favor of summary judgment as to the Yonejis' constructive trust claim was that (1) "[she] has not been unjustly enriched or enriched" and (2) "[s]he is not holding nor controls any funds claimed by Plaintiffs." Charlene provided no evidence or affidavits to support the assertions made in the MSJ.

The MSJ failed to present any affirmative evidence to negate any elements of the Yonejis' constructive trust claim and Charlene failed to show that the Yonejis would be unable to place

proof in the record, given that all parties were still waiting on the Special Master's report. See Ralston at 60-61, 292 P.3d at 1290-91. Charlene failed to satisfy her initial burden of production, thus, the circuit court erred in granting summary judgment in her favor as to the Yonejis' constructive trust claim.

## G. Award of Attorneys' Fees and Costs

The Yonejis claim the circuit court abused its discretion in awarding Charlene attorneys' fees and costs because (1) "the entry of summary judgment was improper and/or premature, (2) the Yonejis' claims were not frivolous, and (3) the fees awarded were unreasonable." We agree.

The circuit court's order found that "pursuant to [HRS] § 607-14.5, that all claims by all Plaintiffs against [Charlene] were and are frivolous, and not reasonably supported by the facts and the law[.]" The circuit court awarded reasonable attorneys' fees of $49,117.33 and costs of $2,948.60 to Charlene and against the Yonejis.

Under HRS § 607-14.5(a),

[i]n any civil action . . . where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order . . . a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim . . . was frivolous . . . .

See Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999). "A frivolous claim has been defined as 'a claim so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required.'" Id. (citing Coll v. McCarthy, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991)). Given our holding that Charlene was not entitled to summary judgment as to five of the Yonejis' six claims against her, the circuit court erred in finding that the Yonejis' claims against her were frivolous. See Bremer v. Weeks, 104 Hawai'i 43, 69, 85 P.3d 150, 176 (2004). The circuit court abused its discretion in granting Charlene's request for attorneys' fees and costs.

## IV.  CONCLUSION

We vacate the following entered in the Circuit Court of the Fifth Circuit, the (1) "Amended Judgment (Amends the Judgment Filed May 1, 2013)" filed January 27, 2014; (2) "Judgment" filed May 1, 2013; and (3) "Order Granting Defendant Charlene Yoneji's Motion for Summary Judgment (Filed 2/22/13)" filed May 1, 2013; except that we affirm the portions of the summary judgment relating to the prima facie tort claims against Charlene Yoneji. This case is remanded for further proceedings consistent with this opinion.


On the briefs:

Patrick K. Shea
Sara Jo Buehler
(Shea & Kamiya)
and
Rebecca A. Copeland
for Plaintiffs-Appellants.

Jason G.F. Wong
and
Michel A. Okazaki
for Defendant-Appellee.