[2 NYS3d 877]

Helen Baran, Doing Business as Baran Vineyards, Plaintiff, v Weitsman's Scrap Yard, Defendant.

City Court of Jamestown, January 27, 2015

## APPEARANCES OF COUNSEL

*Helen Baran*, plaintiff pro se.
*R. Michael Goldman* for defendant.

## OPINION OF THE COURT

FREDERICK A. LARSON, J.

This appears to be a case of first impression as to the liability of a vehicle scrap processor, when accepting a stolen vehicle from a thief who executes Department of Motor Vehicles (DMV) form MV-35, in lieu of presenting a certificate of title.

Charles Sanford, a Pennsylvania resident, thief and, as of October 1, 2014, accused murderer, presented a functioning 1991 Ford F150 pickup truck to the defendant on August 12, 2014.[1] Although Sanford presented a Pennsylvania photo ID, the vehicle had a current New York registration and a current New York inspection sticker on it.

The vehicle was, in fact, owned by the plaintiff, a New York resident, and was stolen on August 12, 2014 from the plaintiff's vineyard in the quaint and ordinarily serene Village of Westfield. Witnesses reported seeing Sanford and his accomplice driving the vehicle through the Westfield Cemetery and heading south on Route 430, a road that, if followed, leads into the City of Jamestown. At about 3:15 p.m., Sanford showed up at the defendant's scrapyard within the City of Jamestown, executed a DMV form MV-35 (since he did not, of course, possess a valid title certificate), presented a Pennsylvania photo ID and sold the vehicle to the defendant for the sum of $478.45. The vehicle was crushed before the plaintiff could discover its whereabouts. At trial, the uncontested evidence was that the vehicle was worth at least $5,000.[2]

Although the defendant now argues, based upon counsel's January 15, 2015 letter to the court, that the vehicle had no "Blue Book" value, such contention is both dehors the record and well outside the bounds of what the court had authorized in terms of a posttrial memorandum of law by December 16,

---

1. Mr. Sanford has been indicted by two grand juries, one federal and one state, on multiple charges including second-degree murder, first-degree robbery, carjacking and firearms charges in connection with the alleged August 20, 2014 shooting and stabbing death of a 61-year-old female concert violinist in Chautauqua County, New York.

2. Plaintiff's proof of the vehicle's value consisted of three different estimates, two from local car dealers and one from http://www.nadaguides.com. Each estimate exceeded $5,000.

2014. At trial, defendant offered no evidence as to any effort the defendant actually made to verify that the vehicle was worth $1,250 or less as required by the Commissioner's regulations.

As to the proper legal name of the defendant, the court takes judicial notice of facts gleaned from the New York State Department of Motor Vehicles' website as well as the New York State Department of State, Division of Corporations' website (*see* CPLR 4511 [b]; *Mendoza v Mortlen Realty Corp.*, 88 AD3d 611, 612 [2011]). The court finds that "Ben Weitsman & Son of Jamestown, LLC" is listed on the Division of Corporations' website as an active, domestic limited liability company, and listed on the DMV website as a DMV-regulated scrap processor. Accordingly, pursuant to Uniform City Court Act § 1814 (c), the defendant's true name is determined to be "Ben Weitsman & Son of Jamestown, LLC." The clerk of the court is directed to amend all papers in this action to conform to that finding.

## Discussion

Vehicle and Traffic Law § 429 (1) (c) provides, in pertinent part, that whenever a person acquires ownership of a motor vehicle which has been sold as junk or salvage scrap, such person shall deliver a statement concerning such acquisition to the Commissioner of Motor Vehicles. Such persons are required to "prepare and distribute a statement of acquisition in accordance with regulations promulgated by the commissioner" (Vehicle and Traffic Law § 429 [2]), using such forms as may be "prescribed by the commissioner" (Vehicle and Traffic Law § 429 [4]).

15 NYCRR 81.1 (b) (8) identifies several DMV-acceptable forms of proof of ownership for junk or salvage vehicles, the last of which is "(vi) in the case of a vehicle eight or more model years old, and worth $1250 or less, form MV-35, signed and properly completed by the *owner of the vehicle*" (emphasis added).[3]

15 NYCRR 81.8 (a) (3) sets forth a "procedure" to be followed by scrap processors: "A scrap processor must take possession of any certificate of title or form MV-35 used as proof of ownership of a vehicle the scrap processor is buying. The scrap pro-

---

**3.** The form is entitled "Statement of Vehicle Owner Who Does Not Have a Valid Title."

cessor must send certificates of title and completed forms MV-35 to the Department of Motor Vehicles within 15 days."[4]

Vehicle and Traffic Law § 429 is derived from chapter 880 of the Laws of 1970, which, among other things, added new sections to the Penal Law, making it a felony to destroy or remove a vehicle identification number (VIN), affix an improper VIN to a vehicle or illegally possess a VIN. The unmistakable legislative intent was to "provide a system which would prevent the use of junked vehicles in assisting in traffic of stolen vehicles" (Mem of State Dept of Motor Vehicles, 1970 McKinney's Session Laws of NY at 3009). Chapter 880 of the Laws of 1970 reflected an awareness that "[a] large segment of the traffic in stolen motor vehicles is based upon the use of vehicle identification number plates and proofs of ownership belonging to vehicles which have been junked" (id.).

As Barbara J. Fiala, the former DMV Commissioner, recently stated:

> "With regard to our MV-35, it was created pursuant to section 429 of the Vehicle and Traffic Law to provide *owners* of older vehicles a lawful means of disposing them as 'scrap' based on its age and value . . . without having to incur the cost and time necessary to obtain a title document" (Letter of Commissioner Barbara J. Fiala to New York State Assemblyman Andrew Goodell, Oct. 23, 2014 [emphasis added]).

Recognizing MV-35's potential to be "misused by some unscrupulous people," DMV has endeavored to "minimize the misuse of the MV-35 . . . [by] increasing the vehicle value from $750 to $1,250, requiring the possessor to present photo identification . . . and requiring the scrapyard to upload the vehicle VIN to the National Motor Vehicle Title Information System (NMVTIS)" (id.).

That potential for misuse has not escaped the notice of the media. For example, the New York Times recently reported that while new car theft is down,

---

4. The court notes an apparent conflict between 15 NYCRR 81.8 (a) (3), which requires the same minimum number of model years, but a lower value of $750 or less, and 15 NYCRR 81.1 (b) (8) (vi), which authorizes the use of form MV-35 when the vehicle is "eight or more model years old, and worth $1250 or less." It appears that an amendment to 15 NYCRR 81.1 (b) (8) (vi) was promulgated February 17, 2004, effective March 3, 2004. However, through an apparent oversight, the Commissioner failed to make a conforming amendment to 15 NYCRR 81.8 (a) (3).

"auto thefts have unexpectedly risen—a trend the police say is driven almost entirely by thieves targeting the oldest and heaviest vehicles they can find. . . . The reason, the police say, is that a quirk in state law allows older, nearly worthless vehicles to be sold as junk with the barest of paperwork. . . . To make it easier to clear the streets of unwanted cars, the state no longer required someone seeking to junk a vehicle at least eight years old and worth less than $1,250 to have the title to the car . . . forms known as the MV-35 and the MV-37 could serve as proxy for a title." (J. David Goodman, *For Car Thieves, the Older and Heavier the Ride, the Better*, NY Times, Apr. 8, 2014.)

Contrary to the defendant's contention, form MV-35 does not immunize a scrap processor from suit by the rightful owner for scrapping a vehicle stolen from the owner nor does it provide an affirmative defense. The statute, in no way, shape or form, abrogates the common-law rules that an innocent purchaser takes no title from a thief (*Green v Wachs*, 254 NY 437 [1930]; *DiLorenzo v General Motors Acceptance Corp.*, 29 AD3d 853 [2d Dept 2006]) and that a bona fide purchaser from a thief is liable in conversion to the thief's victim (*Gruntal v United States Fid. & Guar. Co.*, 254 NY 468 [1930]; *see Williams & Chapin v Merle*, 11 Wend 80 [1833]; *Candela v Port Motors*, 208 AD2d 486 [2d Dept 1994]; *Johnny Dell, Inc. v New York State Police*, 84 Misc 2d 360 [Sup Ct, Onondaga County 1975]; *Federal Ins. Co. v Fries*, 78 Misc 2d 805 [Civ Ct, NY County 1974]; *see also Commodity Futures Trading Commn. v Walsh*, 17 NY3d 162 [2011]).

It is a bedrock principle of statutory construction that "[t]he common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires" (*Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 465 [1993], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 301 [b]). Put another way, "[w]here a change in the common law is to be effectuated the legislative intent to do so must be clearly and plainly expressed" (*Bose v United Empl. Agencies, Inc.*, 200 Misc 176, 179 [NY Mun Ct 1951]).

The statute in question, Vehicle and Traffic Law § 429, fails to clearly and plainly manifest a legislative intent to abrogate the foregoing common-law rules. Since the original legislative intent was to deter the theft of newer vehicles through the use

of VIN plates pilfered from older vehicles, it would be antithetical to that legislative intent to construe the statute in a manner that facilitates, rather than deters, another form of vehicle theft. It could hardly have been the legislature's intent to empower the Commissioner to create a form that enables, rather than prevents, thieves from stealing older vehicles and selling them for scrap through the misuse of a document that serves as a proof of ownership. Furthermore, the regulatory requirement—that the MV-35 must be "signed and properly completed by the owner of the vehicle" (15 NYCRR 81.1 [b] [8] [vi])—bespeaks a regulatory intent to provide only the true owners of older vehicles with a means of disposing of them as scrap. Accordingly, this court refuses to contribute to any construction of form MV-35 that would lead to its use to immunize scrap processors from liability for conversion when they wittingly or unwittingly demolish stolen vehicles. To the extent the DMV Commissioner may construe form MV-35 in such a manner, this court would view such construction as an administrative overreach.In the instant case, the defendant's misuse of the Commissioner's regulations and form MV-35 is flagrant. One would think the state-licensed scrap processor would have experienced some qualms before deciding to accept the MV-35 and keys to the vehicle given some fairly obvious red flags. In particular, the individual claiming to be the owner of the New York registered and inspected vehicle presented a Pennsylvania photo ID. Surely, in this age of technology, when nearly every police vehicle on the road is equipped with computers giving them instant Internet access to DMV records, one would think a DMV-certified scrap processor would have similar ability to access DMV records to verify ownership.

One would also think that the defendant would have engaged in some due diligence with regard to the vehicle's value. A 60-second online check of the universally recognized car valuation websites (National Automobile Dealers Association [NADA] and Blue Book) would have revealed a greater than $5,000 value on NADA. It appears the defendant's thought process was "why bother"—neither the regulations nor the form itself place any kind of onus on the scrap processor to confirm vehicle values. Acting with perceived impunity, the scrap processor in all likelihood considers itself shielded from liability by the MV-35. In other words, all the scrap processor needs under the regulations is a properly completed (though not necessarily by the owner) MV-35 and away goes the vehicle into the destruc-

tive jaws of the demolition equipment, to be crushed into oblivion. It is win-win for the scrap processor and win-win for a putative thief disposing of a stolen older vehicle. The scrap processor has absolutely no incentive or duty under the current regulations to confirm the vehicle's value.

Accordingly, the court concludes that a scrap processor, which accepts a stolen vehicle from a thief who executes a DMV form MV-35, is not shielded from liability in a subsequent action for conversion brought by the vehicle's rightful owner.

To prevail on a cause of action for conversion, the "plaintiff must establish legal ownership of a specific identifiable piece of property" (2A NY PJI2d 3:10 at 111-112 [2014]), as well as the defendant's dominion over the property or interference with it in derogation of the plaintiff's rights (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43 [2006]). "Interference with the right of possession . . . occurs when defendant assumes dominion over the property by refusing to return it, by disposing of it, by misusing it or by otherwise dealing with it in a manner inconsistent with the owner's rights" (2A NY PJI2d 3:11 at 126 [2014] [citations omitted]). It is irrelevant that the defendant acted in good faith or in ignorance of the plaintiff's interest in the property (*Spraights v Hawley*, 39 NY 441 [1868]). Also, the "measure of damages . . . is the value of the property at the time and place of conversion" (*Fantis Foods v Standard Importing Co.*, 49 NY2d 317, 326 [1980]).

In the instant case, the plaintiff has established a cause of action for conversion by proving, through a preponderance of the evidence, her ownership of the property as well as the defendant's interference with her property rights. Furthermore, the plaintiff has established that the vehicle had a value of $5,000 at the time and place of the conversion. Under the facts of this case, it is a small price of doing business as a scrap processor, particularly one which cavalierly placed its reliance on a DMV form accepted from a thief with virtually no due diligence of any kind, for the defendant to pay the plaintiff the sum of $2,100 ($5,000 less $2,900 reimbursed to the plaintiff by her own insurance company).

Based upon the foregoing, the court finds that plaintiff Helen Baran, doing business as Baran Vineyards, is entitled to a judgment in the amount of $2,100 together with court costs in the sum of $20, and it is hereby ordered, that a judgment be entered in favor of the plaintiff Helen Baran, doing business as Baran Vineyards, and against the defendant Ben Weitsman &

Son of Jamestown, LLC in the amount of $2,100, plus court costs in the sum of $20.